TWIN CONSTRUCTION, INC., a
Florida Corporation,
Plaintiff–Appellant,

v.

BOCA RATON, INCORPORATED, a Florida Corporation, Homes International Development Corporation, a Florida Corporation, Investors Two of Palm Beach, Inc., a Florida Corporation d/b/a Habitat, a shopping mall, a Florida general partnership, Albat Jansenson, Vernon Investments, Inc., Monte Campbell Crane Co., Inc., American Hi–Lift Corporation, Wolfgant Stau, d/b/a Stau Sign Studio, Federal Maintenance, Inc., C.S.R. Heavy Construction, Inc., Caufield Wheeler, Inc., Steven L. Cohen Architect, P.A., Underground Supply Company, Inc., jointly and severally, Defendants,

Federal Deposit Insurance Corporation, as Receiver for Vernon Savings and Loan Association, FSA, Defendant–Appellee.

No. 89–6103.

United States Court of Appeals,
Eleventh Circuit.

March 1, 1991.

---

Gary A. Woodfield, Edwards & Angell, Palm Beach, Fla., for FSLIC as receiver for Vernon.

Before CLARK, Circuit Judge, and HILL * and COFFIN **, Senior Circuit Judges.

HILL, Senior Circuit Judge:

These consolidated cases present yet more litigation resulting from the savings and loan crisis. The cases stem from an attempt by a builder to obtain priority over a lender in connection with foreclosure on certain real property. Appellant Twin Construction, Inc. ("Twin") originally commenced an action in a Florida state court against Vernon Savings and Loan Association ("Old Vernon") and other defendants seeking to foreclose upon a mechanic's lien resulting from work performed on construction of a shopping center. Old Vernon, on the other hand, commenced its own action in a Florida state court in order to foreclose upon notes and mortgages and to enforce guarantees furnished in exchange for loans for the acquisition, development, and construction of the shopping center. Subsequently, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Old Vernon, and FSLIC transferred substantially all of Old Vernon's assets to New Vernon. New Vernon, too, became insolvent, and FSLIC was appointed receiver. After FSLIC removed the above actions to federal court, the district court consolidated the cases. Concluding that FSLIC was entitled to priority as a matter of law, the district court then granted FSLIC's motion for summary judgment in both consolidated cases. This appeal followed.

I. INTRODUCTION

A. BACKGROUND

On May 30, 1985, Twin entered into a construction contract with Habitat, the

Kyle A. Silverman, Manley H. Thaler, Thaler & Thaler, P.A., West Palm Beach, Fla., for plaintiff-appellant.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Frank M. Coffin, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

Shopping Mall ("Owner") to build a shopping center to be known as Village Point in Boca Raton, Florida. Twin commenced work on July 1, 1985. Under the terms of the contract, Twin expressly agreed that any lien it might subsequently assert would be subordinated to a mortgage lien by the lender of funds for the project. Old Vernon agreed to provide funding for the development of the project on July 24, 1985. In return, Owner signed and delivered a promissory note for $8.9 million, secured by a mortgage on the real property. Old Vernon recorded the mortgage the following day in Palm Beach County, Florida.

In connection with the loan, Old Vernon also requested that Twin consent to an assignment from Owner to Old Vernon of Owner's rights under the construction contract. Contemporaneous with the signing of the note, on July 24, 1985, Twin signed and returned to Old Vernon a one-page Contractor's Consent form originally prepared by Old Vernon. Old Vernon did not sign the Contractor's Consent form, but did place the document in its records along with the other loan documents and did make the loan to Owner. Among other things, the form subordinated any "statutory mechanic's and materialmen's liens to which [Twin] may be or become entitled" to all liens and security interests of Old Vernon. Before signing and returning the form, Twin changed or added to three paragraphs. In paragraph five, Twin added the clause at issue in this case: "Lender will reserve sufficient funds in the Loan Agreement Account to satisfy the 'Agreement' between Owner and [Twin] and all payments for such purpose shall be made by check payable jointly to Owner and [Twin]." Although Twin's president sent a letter to Old Vernon's attorneys confirming the latter's agreement to Twin's change in paragraph one of the form, after carefully reviewing the record we have found no similar evidence of an agreement with respect to Twin's addition to paragraph five.

In February, 1986, Owner advised Twin that it could not pay the balance due under the contract. Twin alleges that it continued work under the contract because of the Contractor's Consent form and because of oral representations by Old Vernon that additional payment would be forthcoming from the loan proceeds. When the balance remained unpaid, on March 4, 1986, Twin filed a claim of lien on the Village Point project for approximately $1.5 million. On July 24, 1986, Twin commenced an action in the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County, Florida, against Old Vernon and other defendants. In Count I, Twin sought to foreclose its mechanic's lien and to elevate its lien above Old Vernon's because of the alleged oral representations from Old Vernon and because Old Vernon failed to reserve sufficient funds to satisfy Twin's construction contract and failed to make checks payable jointly to Owner and Twin. In a separate count, Twin also alleged claims against Old Vernon for fraud because of the oral representations. In yet another count, Twin alleged breach of contract based on the oral representations and on the Contractor's Consent form.

Owner also defaulted on the notes and mortgages due Old Vernon, and on August 27, 1986, Old Vernon commenced suit in the same Florida court to enforce the notes and mortgages. In seeking to foreclose on three notes and two mortgages, Old Vernon alleged that its lien had priority over Twin's. Twin's answer and counterclaim contained allegations similar to those in its own suit.

On March 20, 1987, the Federal Home Loan Bank Board determined that Old Vernon was insolvent and appointed FSLIC as receiver. FSLIC then created New Vernon and transferred substantially all the assets and liabilities of Old Vernon to New Vernon, including the loan documents at issue in this case. Shortly after its creation, New Vernon followed in its predecessor's footsteps, being declared insolvent and having FSLIC appointed as receiver.

FSLIC removed the actions to federal district court in December, 1988, and the district court thereafter consolidated them. FSLIC moved for summary judgment in both cases, claiming that, as a matter of law, the doctrine announced in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), precluded Twin from asserting its claims. Based on

the *D'Oench* doctrine, the district court granted summary judgment on September 9, 1989. 721 F.Supp. 290.[1]

## B. CONTENTIONS

On appeal, Twin proffers several reasons why the *D'Oench* doctrine is inapplicable to this case. First, Twin contends that the *D'Oench* doctrine applies only to claims asserted by the maker of a note, and that any agreement between it and Old Vernon is thus not subject to *D'Oench*. Second, Twin claims that *D'Oench* is inapplicable where a deceptive or fraudulent scheme does not exist. Third, Twin asserts that where FSLIC has actual knowledge of a collateral agreement outside the terms of a note, *D'Oench* is inapplicable. Finally, citing the clause in paragraph five of the Contractor's Consent form, Twin maintains that this case falls outside the *D'Oench* doctrine because the alleged agreement is written rather than oral.

## II. STANDARD OF REVIEW

The district court's grant of summary judgment is subject to de novo review. *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1104 (11th Cir.1990). We must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All the evidence and factual inferences therefrom are reviewed in the light most favorable to the party opposing the motion. *Carriers Container Council, Inc. v. Mobile S.S. Assoc.*, 896 F.2d 1330, 1337, *modified*, 904 F.2d 28 (11th Cir.1990).

## III. DISCUSSION

A. The development of the *D'Oench* doctrine and its codification demonstrate that appellant's first three contentions must fail

To analyze Twin's claims regarding the *D'Oench* doctrine requires an understanding of the evolution of the doctrine. In *D'Oench*, the petitioner provided a demand note to a bank. The petitioner's intention was to enable the bank to avoid reflecting a loss on its books from another debtor that had defaulted. The parties had an understanding that the bank would not collect on the note, as evidenced by a statement in the receipt the bank gave the petitioner. FDIC acquired the note five years later, as part of a purchase and assumption transaction, and demanded payment. FDIC learned of the existence of the receipt at this time. The Supreme Court permitted FDIC to enforce the note, finding a "federal policy to protect [FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [FDIC] insures or to which it makes loans." *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679. Despite the maker's lack of intent to deceive FDIC (Congress had not even created FDIC at the time the maker executed the note), the Supreme Court declared that "[t]he test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient ... that the maker lent himself to a scheme or arrangement whereby the banking authority ... was or was likely to be misled." *Id.* at 460, 62 S.Ct. at 681.

Congress subsequently codified *D'Oench* and its progeny at 12 U.S.C.A. § 1823(e). That section now reads as follows:

(e) Agreements against interests of Corporation

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

---

1. Prior to the district court's grant of summary judgment, the president signed into law the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (1989) ("FIRREA"). Section 401(a) abolished the FSLIC, and FIRREA substitutes the Federal Deposit Insurance Corporation ("FDIC") in its place. For convenience, we will continue to refer to FSLIC throughout the opinion.

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e) (West 1989).

FSLIC as receiver was never entitled to rely upon the statutory defenses given to FDIC, but could assert its federal common law defenses stemming from *D'Oench* and its progeny. *See FDIC v. McCullough*, 911 F.2d 593, 598 n. 4 (11th Cir.1990). However, courts have found the aims of section 1823(e) and *D'Oench* identical and thus have construed defenses premised upon section 1823(e) and *D'Oench* in tandem. *Id. See also Vernon*, 907 F.2d at 1105; *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274 (5th Cir.1989); *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989).[2]

As this court has previously noted, courts have applied section 1823(e) to protect the FDIC from a variety of claims: "secret non-payment agreements, assertions of unwritten arrangements allegedly breached by the bank rendering the debt voidable, and ... claims that the creation of the debt was fraudulently induced by the bank." *Vernon*, 907 F.2d 1101, 1105 (citations omitted). Furthermore, courts have applied the *D'Oench* common law to protect the FDIC, the FSLIC, or some successor in interest, from claims of state and common law fraud, violation of state or federal securities laws, and the affirmative defenses of waiver, estoppel, unjust enrichment, failure of consideration and usury.

*Id.* at 1106 (citations omitted). Contrary to appellant's assertion that *D'Oench* only affects claims asserted by a maker of a note, *D'Oench* and section 1823(e) have affected monetary obligations including a mortgage, a letter of credit or personal guaranty or collateral pledge agreement securing a loan, rental payments under a lease, and a refund provision in an insurance contract. *Id.* at 1107. The applicability of *D'Oench* to any type of asset follows logically from the language in the *D'Oench* case about protecting the banking authority from misrepresentations as to "securities *or other assets.*" *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679 (emphasis added). Additionally, section 1823(e)'s "any asset" language confirms that the assets covered are far broader than the narrow reading appellant offers. Federal regulatory authorities need to make reliable evaluations of the assets of a financial institution. *Vernon*, 907 F.2d at 1104–05. If *any* of a bank's assets are diminished by agreements not contained in the records of the bank, the regulatory authorities cannot do so.

Curiously, appellant asserts that the agreement between Old Vernon and Twin benefitted the real property and that *D'Oench* thus does not apply because no fraudulent arrangement exists in the instant case. This issue has long been decided. Neither the intent to deceive nor fraud are requisites for the application of *D'Oench*. *Beighley*, 868 F.2d at 784. "The statute and the cases only require that [a party] lend himself 'to a scheme or arrangement whereby the banking authority ... was or was likely to be misled.'" *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 361 (5th Cir. Unit B July, 1981) (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Such a party "cannot rely upon that same scheme or arrangement to defend against the banking authority's subsequent actions." *McCullough*, 911 F.2d at 600. Appellant has declined to argue that it has not lent itself to

---

**2.** We thus need not determine whether, because FDIC was substituted for FSLIC prior to the entry of summary judgment, the statutory codification in section 1823(e) rather than the common law of *D'Oench* and its progeny should apply to this case. We will reach the same result regardless.

an arrangement that might mislead banking authorities, so we need not discuss what non-fraudulent activity would escape the reach of *D'Oench* and section 1823(e).

This case also requires that we again address the effect on the FSLIC of its knowledge of a defense to payment or of an obligation to pay a claimant. Appellant asserts that because FSLIC had actual knowledge of Old Vernon's obligation and no fraud was involved, *D'Oench* is inapplicable. It is true that at the time FSLIC took over Old Vernon this litigation had already commenced. The Supreme Court and this circuit have recognized, however, that knowledge at the time FSLIC *acquires* an obligation is irrelevant. *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 402–03, 98 L.Ed.2d 340 (1987); *FSLIC v. Two Rivers Assocs.*, 880 F.2d 1267, 1275 n. 12 (11th Cir.1989). As the Supreme Court explained in *Langley*, two of the policies behind section 1823(e), and by implication the *D'Oench* doctrine, are to "assure prudent consideration of the loan before it is made, and [to] protect against collusive reconstruction of loan terms by bank officials and borrowers.... Knowledge by the [FSLIC] could substitute for the latter protection only if it existed at the very moment the agreement was concluded, and could substitute for the former assurance not at all." *Langley*, 108 S.Ct. at 403.

B. That a document is written and in the bank's records is not enough to bring the case outside *D'Oench* and section 1823(e)

■ Twin's final contention is that the *D'Oench* doctrine does not apply because the alleged agreement (the Contractor's Consent form) is written rather than oral and was included in Old Vernon's records as one of the loan documents. The district court found this argument inadequate because of its conclusion that Old Vernon had not executed the Contractor's Consent form and that the additional clause in paragraph five made the document internally inconsistent.

We have recognized that *D'Oench* does not aid the federal banking authority where bilateral obligations appear in the bank's records. *Two Rivers*, 880 F.2d at 1275 (citing *Howell v. Continental Credit Corp.*, 655 F.2d 743, 746 (7th Cir.1981)). Appellant contends that the Contractor's Consent form contains bilateral obligations and that *D'Oench* and section 1823(e) thus do not apply. It is true that in contract law an unsigned document can impose an obligation on a party, such as where the party's words or acts indicate assent to the proposed bargain. *See Fujimoto v. Rio Grande Pickle Co.*, 414 F.2d 648, 652–53 (5th Cir.1969). To understand whether a bilateral obligation falls outside of *D'Oench* and section 1823(e), though, it is necessary to look beyond normal contract law. We must study the specific language in *Howell* cited by *Two Rivers*, examine section 1823(e) itself, and recall the purposes of the *D'Oench* doctrine and section 1823(e).

In *Howell*, Howell had an agreement with Continental Credit Corporation that the latter would purchase certain equipment and lease it to Howell. Continental sold its interest in the leases to a bank in order to obtain the money to pay for the equipment. After Continental failed to purchase the equipment, Howell brought an action to have the leases determined void. FDIC subsequently obtained the bank's interest in the leases pursuant to a purchase and assumption transaction and attempted to enforce the leases against Howell. According to the Seventh Circuit, the leases "clearly manifest[ed] the bilateral nature of the lessee's and lessor's rights and obligations." *Howell*, 655 F.2d at 747. Because the leases "facially manifest[ed] *bilateral* obligations," *id.* at 746 (emphasis in original), the Seventh Circuit concluded that *D'Oench* and section 1823(e) did not apply. *Id.* at 748. *Howell* thus teaches that, in order to avoid the application of *D'Oench* and section 1823(e), the document upon which a party relies must itself establish that the party sought to be bound (in our case, FSLIC) is obligated.[3]

F.2d at 747–48.

---

**3.** Of course, the document need not set forth the exact details of the obligation. *See Howell*, 655

Where only a single party has signed a document, that document itself does not establish that the non-signatory is required to perform any obligations contained in the document. Instead, it would be necessary to resort to an assessment of the non-signatory's words or acts in order to determine whether that party is so bound. In the case before us, for example, determining whether the non-signatory was bound would require looking to the Construction Loan Agreement between Owner and Old Vernon[4] and to whether, as required by the Contractor's Consent form, Old Vernon had in fact ever reserved funds in the Loan Agreement or made checks payable jointly to Owner and Twin. While such an inquiry may be permissible in the context of normal contract construction, we do not believe that *D'Oench* and section 1823(e) permit this inquiry.

This conclusion is consistent with the specific language in section 1823(e) itself. Section 1823(e) does not merely require that an agreement "become binding" on the depository institution. Section 1823(e) requires that an agreement be *"executed by the depository institution."* 12 U.S.C.A. § 1823(e)(2) (emphasis added). While the code section does not define "executed," Black's Law Dictionary does define the word:

> Completed; carried into full effect; already done or performed; signed; taking effect immediately; now in existence or in possession; conveying an immediate right or possession. Act or course of conduct carried to completion. Term imports idea that nothing remains to be done. The opposite of executory.

For purposes of the present case, "executed" can thus have two meanings: (1) that both sides have fully performed any obligations contained in the agreement; and (2) that both sides have signed the agreement. Twin would not be before this court if the first interpretation were appropriate. The second interpretation thus remains. In the context of section 1823(e)(2),

"executed" must mean that the depository institution has "signed" the agreement. That a piece of paper merely recites obligations of more than one party is insufficient to prevent FSLIC's use of *D'Oench* and section 1823(e).

Were we to adopt any other definition, the result would clash with the purposes of section 1823(e) and the *D'Oench* doctrine. First, we have already indicated at page 382 that an unsigned document might mislead the banking authority. Bank examiners must reliably evaluate the worth of a bank's assets "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Langley,* 108 S.Ct. at 401 (quoting *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir. 1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)). At the least, an unsigned document makes it very difficult for bank examiners under those circumstances to determine whether the banking authority will be bound.

A second purpose of *D'Oench* and section 1823(e), as noted at page 382, is to "assure prudent consideration of the loan before it is made." *Langley,* 108 S.Ct. at 403. If a bank has not signed a document that purports to impose on it certain obligations, there is no clear evidence that the bank considered the obligations, much less that it prudently considered them. A bank, for example, might receive a Contractor's Consent form, see that it is signed by the contractor, and proceed to make the loan to the developer without a bank employee's ever having read the added language. While prudence is not a requirement of normal contract law and thus the bank might be bound, prudent consideration of the loan is a purpose behind the *D'Oench* doctrine and section 1823(e) and dictates that FSLIC not be bound by such conduct.

Twin's final attempt to avoid application of *D'Oench* and section 1823(e) must thus fail.[5]

---

**4.** We note that this Agreement is not even in the record before this court.

**5.** Because Old Vernon did not execute the Contractor's Consent form, we need not address

whether Twin could satisfy the other requirements set forth in section 1823(e).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the summary judgment of the district court.