932 F.2d 1250
 EMPIRE STATE BANK, a Minnesota corporation, Appellee,
v.
CITIZENS STATE BANK, Federal Deposit Insurance Corporation,
as Liquidator and/or Receiver of Citizens State
Bank, Appellant.
 No. 90-5255.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1991.
Decided May 10, 1991.
Order on Denial of Rehearing
Aug. 5, 1991.
 Rehearing En Banc Denied
Aug. 5, 1991.
 
 E. Whitney Drake (FDIC), Washington, D.C., for appellant.
 James Anderson, Marshall, Minn., for appellee.
 Before LAY, Chief Judge, and FAGG and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 The Federal Deposit Insurance Corporation (FDIC) appeals from the decision of the District Court[1] remanding this action to state court. Appellate jurisdiction is based upon 12 U.S.C.A. Sec. 1819(b)(2)(C) (West 1989). We affirm.
 
 
 2
 In September 1983, Empire State Bank, a Minnesota banking corporation (Empire), purchased from Citizens State Bank of Fulda, Minnesota (Citizens), a $200,000 participation interest in loans made by Citizens to Duane Sather (Sather). Empire renewed this participation in March 1984. Empire's renewed participation interest, like the original one, is evidenced by a document entitled "Certificate of Participation Pro Rata" and signed on behalf of Citizens by one of its officers. In February 1985, the Minnesota Commissioner of Commerce declared Citizens insolvent, closed it, and appointed the FDIC as its receiver. The FDIC then initiated court action against Sather and eventually collected a substantial amount of money. It also filed claims under Citizens' banker's blanket bond and its excess employee dishonesty blanket bond, both which were issued by Hartford Accident and Indemnity Company (Hartford). Those claims were settled, with the FDIC receiving a substantial payment from Hartford.
 
 
 3
 In August 1989, Empire filed a proof of claim with the FDIC, asserting that Empire had an interest in the monies recovered from Sather and Hartford. Following what Empire took as the FDIC's denial of this claim,[2] Empire, seeking a recovery based on state-law rights assertedly flowing from its participation in Citizens' loans to Sather, initiated a state court action against the FDIC. The FDIC removed the action to the District Court.
 
 
 4
 Empire then moved for remand[3] to state court pursuant to 12 U.S.C.A. Sec. 1819(b)(2)(D) (West 1989), which provides that:
 
 
 5
 Except as provided in subparagraph (E), any action--
 
 
 6
 (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
 
 
 7
 (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
 
 
 8
 (iii) in which only the interpretation of the law of such State is necessary,
 
 
 9
 shall not be deemed to arise under the laws of the United States.
 
 
 10
 12 U.S.C.A. Sec. 1819(b)(2)(D) (West 1989). In response, the FDIC argued that as Empire's lawsuit asserted claims upon monies collected by the FDIC after the closing date of Citizens, Empire's claims thus did not involve only "preclosing rights."[4] The FDIC also argued that Empire's claim against the Hartford bond proceeds was barred by 12 U.S.C.A. Sec. 1823(e) (West 1989), and consequently that the case presented an issue of federal law making remand inappropriate.[5]
 
 
 11
 The District Court granted Empire's motion for remand. In doing so, it held that Empire's claims involved only "preclosing rights" since the "rights the plaintiff seeks to vindicate ... are based on a participation purchased September 28, 1983, and renewed March 28, 1984, both of which dates obviously fall prior to the closing of [Citizens]." Brief for FDIC, Add. A at 6 (Memorandum and Order). The court also held that section 1823(e) did not bar Empire's claim against the Hartford bond proceeds since Empire's claim does not depend upon "secret" or unwritten agreements with Citizens but rather is "that it has an equitable right under a 'trust fund' theory pursuant to state receivership law to a preferred claim to a proportionate share of those proceeds by virtue of the written participation agreement." Brief for FDIC, Add. A at 8-9 (Memorandum and Order) (emphasis in original.)
 
 
 12
 In this appeal from the District Court's order remanding the case to state court, the FDIC contends that the remand was erroneous because Empire's claim upon the bond proceeds does not involve only "preclosing rights" as required by section 1819(b)(2)(D)(ii). It reasons that any equitable claim that Empire might have upon the Hartford bond proceeds could only have come into existence after the FDIC recovered on the bonds, which occurred after the FDIC took over Citizens. We disagree.
 
 
 13
 All the asserted rights Empire is seeking to vindicate in this suit flow directly, as a matter of state law, from the participation agreement executed by Empire and Citizens in 1983 and renewed in 1984. As Citizens was not closed until 1985, the District Court was correct in its conclusion that whatever rights Empire may have by reason of the participation agreement are "preclosing rights."
 
 
 14
 The FDIC also contends that remand was inappropriate as it has raised a federal defense under section 1823(e) to Empire's claim upon the bond proceeds, and any resolution of the suit necessarily would require a resolution of this issue. Because remand pursuant to section 1819(b)(2)(D) is improper unless resolution of the claim requires only interpretation of state law, the FDIC concludes that the remand under section 1819(b)(2)(D) was erroneous. Again, we disagree.
 
 
 15
 We believe that Congress intended for section 1819(b)(2)(D) to have some effect. See Zeigler Coal Co. v. Kleppe, 536 F.2d 398, 406 (D.C.Cir.1976) ("a statute should not be construed in such a way as to render certain provisions superfluous or insignificant"). But to accept the FDIC's reasoning regarding its section 1823(e) defense would render section 1819(b)(2)(D) entirely superfluous, for the FDIC always has the ability to assert that it has a federal defense based on section 1823(e). We therefore reject the position of the FDIC. A more reasonable interpretation of section 1819(b)(2)(D) is that remand is inappropriate by virtue of subpart three of that section only where the court must decide a "disputable issue of federal law." Perini Corp. v. FDIC, 754 F.Supp. 235, 238 (D.Mass.1991). Adopting that approach, we are satisfied that here the FDIC's section 1823(e) defense does not present a "disputable issue of federal law" and that whether Empire's claims stand or fall is wholly dependent upon state law.
 
 
 16
 Empire's claims with respect to the bond proceeds would implicate section 1823(e) only if Empire was attempting to enforce an agreement that tended to "diminish or defeat the interest of the Corporation in any asset acquired by it" under sections 1821 or 1823. 12 U.S.C.A. Sec. 1823(e) (West 1989). As the FDIC itself points out, the participation agreement that is the foundation of Empire's claim is not addressed to the bonds or their proceeds. Rather, it reflects participation by Empire in Citizens' loans to Sather. There is no off-the-books agreement tending to diminish the FDIC's interest in the bonds, and it is only through equitable principles embodied in Minnesota law that Empire is able to assert a claim upon the bond proceeds. Thus Empire's claim upon these proceeds is not based upon an "agreement tending to diminish or defeat the interest of the Corporation" within the meaning of section 1823(e).
 
 
 17
 Moreover, the participation agreement involved in this litigation is not the sort of agreement to which section 1823(e) is directed. Section 1823(e) generally is accepted as representing the codification of the rule from D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).[6] There the Supreme Court held that when the maker of an instrument has " 'lent himself to a scheme or arrangement whereby the banking authority ... was likely to be misled,' that scheme or arrangement could not be the basis for a defense against the FDIC." Langley v. FDIC, 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987) (quoting D'Oench, 315 U.S. at 460, 62 S.Ct. at 680 (emphasis in Langley )). Here we can find nothing supporting the conclusion that the participation agreement constituted an arrangement likely to mislead the FDIC or that Empire in any way "lent [itself] to a scheme or arrangement" likely to mislead the FDIC. Indeed, the FDIC has made no argument to this effect. In these circumstances, to apply section 1823(e) to Empire's claims upon the bond proceeds would be unwarranted.
 
 
 18
 The cases relied upon by the FDIC involving applications of section 1823(e) are inapposite. For example, in Beighley v. FDIC, 868 F.2d 776, 782-82 (5th Cir.1989), the dispute centered upon whether the maker of a note could assert claims against the FDIC that arose from an alleged side-agreement the maker claimed the failed bank had entered in exchange for the execution of the maker's note. In Belsky v. First Nat'l Life Ins. Co., 653 F.Supp. 80 (D.Neb.1986), aff'd 818 F.2d 661 (8th Cir.1987), the issue was whether the president of a failed bank could enforce an alleged side-agreement requiring the bank to use a life insurance policy to fund his retirement. The issues in both cases clearly focused upon agreements "tending to diminish or defeat the interest of the Corporation" in its acquired assets. Furthermore, both Beighley and Belsky involved "scheme[s] or arrangement[s] whereby the banking authority ... was likely to be misled." D'Oench, 315 U.S. at 460, 62 S.Ct. at 680; see Beighley, 868 F.2d at 784 ("Moncor's alleged oral agreement to finance future loans is not clearly evidenced in the bank's records, and would not be apparent to bank examiners"); Belsky, 653 F.Supp. at 85 ("The salary continuance agreement provides that the policy is a general, unrestricted asset of the Bank ... and Belsky cannot alter [these documents] by introducing extrinsic evidence that they are other than purported on the documents themselves unless the requirements of Sec. 1823(e) are met."). Here, the participation agreement bears none of the infirmities of the "secret" agreements that were at issue in the cases upon which the FDIC relies.
 
 
 19
 Finally, the FDIC belatedly argues that Empire's claim upon the proceeds recovered from Sather is barred by section 1823(e), and that this argument creates an issue of federal law, making remand under section 1819(b)(2)(D) inappropriate. Essentially this is an argument that the participation agreement itself, even though in writing, signed by an authorized officer of Citizens, and purchased by Empire's payment of $200,000 to Citizens, somehow does not meet the criteria of section 1823(e). However, we can find nothing to indicate that this issue ever was presented to the District Court, and it appears certain that that court never considered it. See Brief for FDIC, Add. A at 5, 7 (Memorandum and Order) ("Defendants contend that remand should be denied because ... plaintiff's claims to the bond proceeds are barred.... FDIC urges that federal jurisdiction is appropriate because plaintiff's claim to the bond proceeds does not involve only state law, but is barred by 12 U.S.C. Sec. 1823(e)" (emphasis added)). "[I]ssues not raised in the trial court cannot be considered by this court as a basis for reversal. We adhere to this rule 'save in exceptional cases where the obvious result "would be a plain miscarriage of justice ... or would be inconsistent with substantial justice." ' " Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir.1987) (citations omitted). This is not an "exceptional" case within the meaning of our long-standing rule, and we therefore decline to address this argument that was not raised in or considered by the District Court. By not raising the issue at the appropriate time, the FDIC has waived it.
 
 
 20
 For the reasons set forth above, we conclude that Empire's claim against the Hartford bond proceeds involves only pre-closing rights and, as the FDIC's asserted section 1823(e) defense does not present a disputable issue of federal law, that the case involves only the interpretation of state law. Accordingly, the order of the District Court remanding this action to state court pursuant to section 1819(b)(2)(D) is affirmed.
 
 
 21
 Order Denying Petition for Rehearing.
 
 Aug. 5, 1991
 
 22
 The petition for rehearing is denied. Chief Judge Lay dissents from the denial of the petition for rehearing.
 
 
 23
 LAY, Chief Judge, dissenting.
 
 
 24
 @I respectfully dissent from the panel's denial of the FDIC's petition for rehearing in this matter. Although I originally joined the panel opinion, further reflection on the case law and argument raised by the FDIC's petition for rehearing have convinced me that the court wrongly decided the principal issue involved and incorrectly remanded the case to state court.
 
 
 25
 I fully agree with our original conclusion that if the FDIC raises a disputable issue of federal law in its answer, the state law exception of 12 U.S.C. Sec. 1819(b)(2)(D)(iii) (1989) is inapplicable and the federal district court should retain jurisdiction. See Capizzi v. FDIC, ---F.2d---, 1991 WL 105459 (1st Cir. June 19, 1991); Lazuka v. FDIC, 931 F.2d 1530, 1535 (11th Cir. 1991). However, in our panel opinion we rejected FDIC's reliance on 12 U.S.C. Sec. 1823(e) (1989) raising a good faith federal defense to Empire's equitable claim to the proceeds from the Hartford fidelity bonds. I now believe this holding was in error.
 
 
 26
 Empire bases its equitable right to share in the bond proceeds upon the 1984 participation agreement from which it received a contractual interest in the Sather promissory notes held by the failed bank. It urges that the participation agreement provides the basis to assert a claim of equitable subrogation against the proceeds of the blanket fidelity bonds. Section 1823(e) addresses any agreement which diminishes an asset of the FDIC. One of the prerequisites of a valid agreement under section 1823 is that it be contemporaneously executed with the failed bank's acquisition of the asset, a requirement this court has strictly construed. See FDIC v. Virginia Crossings, 909 F.2d 306, 309-10 (8th Cir. 1990). The FDIC contends that since the participation agreement was executed over two years after the failed bank acquired the Hartford bonds, there is no contemporaneous execution. I am now satisfied that this clearly sets forth a colorable federal defense and raises a disputable issue concerning application of section 1823(e). I therefore respectfully submit that the panel opinion wrongly decides that only issues of state law are present and incorrectly affirms the district court's remand of the case to state court based upon section 1819(b)(2)(iii).
 
 
 27
 This case assumes further importance because it establishes the law of this circuit in conflict with other circuits. It also contradicts earlier law of this circuit.
 
 
 28
 The panel opinion takes too narrow a view of the reach of section 1823(e). This circuit and other circuits reject the panel opinion's implication that section 1823(e) and the D'Oench doctrine extend only to 'secret" off-the-books agreements. See, e.q., FDIC v. Manatt, 922 F.2d 486, 488-89 (8th Cir. 1991) (holding that claim based upon written agreement in files of bank was barred by section 1823(e) because agreement was not adequately shown in the board meeting minutes); Adams v. Madison Realty & Development, Inc., ---F.2d---,1991 WL 111703 at * 8 (3d Cir. June 27, 1991) (holding that term 'agreement" in section 1823(e) includes more than side and secret agreements); Twin Construction Inc. v. Boca Raton, Inc., 925 F.2d 378, 383-84 (11th Cir. 1991) (finding that claim based upon written agreement in bank's files barred because not excuted per the requirement of section 1823(e)). A recent Fifth Circuit case succinctly states the general rule: '(The agreement) need not be 'secret," only outside the bank's records. In addition, an actual scheme is not required...." FSLIC v. Griffin, 935 F.2d 691, 698 (5th Cir. 1991). The Griffin court found an equitable lien claim analogous to the one Empire asserts in this case barred by D' Oench. See also Adams v. Walker, ---F. Supp.---, 1991 WL 111068 at * 5 (D. Kan. June 20, 1991) (section 1823(e) 'expands D'Oench. Duhme in that it applies to any agreement, whether or not it was 'secret," and regardless of the maker's participation in a scheme") .
 
 
 29
 With the 1989 FIRREA amendments to 12 U.S.C. Sec. 1819, Congress expressed its intent that suits involving the FDIC should generally be decided in the federal courts. Kirkbride v. Continental Casualty Co., 933 F.2d 729, 731-32 (9th Cir. 1991). The holding in Empire State Bank runs counter to the great weight of recent cases interpreting section 1823(e). Because I now believe the panel opinion incorrectly decides important issues that will no doubt recur in this circuit, I dissent from the denial of the FDIC's petition for rehearing by the panel.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 The FDIC takes the position that it has yet to deny Empire's claim. Empire counters that the FDIC orally refused to pay Empire on its claim except to the extent that Empire would recover as a general creditor
 
 
 [3]
 Empire also moved, in the alternative, for summary judgment
 
 
 [4]
 In addition to opposing Empire's remand motion, the FDIC moved for dismissal and, alternatively, for summary judgment
 
 
 [5]
 That section provides that:
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 (1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 12 U.S.C.A. Sec. 1823(e) (West 1989).
 
 
 [6]
 See, e.g., Twin Construction, Inc. v. Boca Raton, Inc., 925 F.2d 378, 382 (11th Cir.1991) ("courts have found the aims of section 1823(e) and D'Oench identical and thus have construed defenses premised upon section 1823(e) and D'Oench in tandem"); FDIC v. Newhart, 892 F.2d 47, 49 (8th Cir.1989); FDIC v. Blue Rock Shopping Center, Inc., 766 F.2d 744, 753 (3rd Cir.1985)