FEDERAL DEPOSIT INSURANCE CORPORATION in its Corporate Capacity as Liquidator for Community Bank, N.A., Plaintiff,

v.

Altaf ADAM, Debbie Brueckner and Jim C. Cope, Defendants.

Civ. A. No. 89–0654.

United States District Court,
S.D. Texas,
Houston Division.

April 21, 1993.

Scott Morse, Brown Maroney Oaks & Hartline, Austin, TX, for FDIC.

Stephen W. Schueler, Winstead Sechrest & Minick, Houston, TX, for Community Bank.

Robert Hinton, Hinton & Cox, Houston, TX, for defendants.

Altaf Adam, pro se.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending before the Court is Defendant Altaf Adam's ("Adam") Motion to Reconsider Denying Jurisdiction (Document No. 59). Having considered the motion, response, arguments, and authorities submitted by counsel, and for the reasons set forth below, the motion is DENIED.

### I. *Background*

Recently, the Fifth Circuit, in *Nimon v. Resolution Trust Corp.*, 975 F.2d 240 (5th Cir.1992), interpreted 12 U.S.C. § 1821(f), as amended by the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), as conferring subject matter jurisdiction over all final determinations by the Fed-

eral Deposit Insurance Corporation concerning claims for deposit insurance "... in the United States Court of Appeals for ... the Federal judicial circuit where the principal place of business of the depository institution is located."[1] By Order dated December 21, 1992 (Document No. 52), this Court directed the parties' attention to the *Nimon* decision and asked them to submit written statements advising the Court of their respective positions on whether this Court had jurisdiction over Defendant Adam's deposit insurance counterclaim. At that time, Adam submitted a four page response in which he argued (1) that the FDIC had not yet made a "final determination" to deny his claim; (2) that, unlike *Nimon*, the instant case involved issues other than the FDIC's denial of deposit insurance, including whether Adam was responsible for certain losses incurred by Community Bank during Adam's employment there; (3) that a number of fact issues existed in the case requiring determination by a district court; and (4) that the district court already had exercised jurisdiction over the case, thus making it "nonsensical," in Adam's view, for the Court to relinquish jurisdiction to another court. After reviewing both Adam's brief and the FDIC's response in light of relevant authority, this Court dismissed Adam's deposit insurance counterclaim for lack of subject matter jurisdiction.

Adam now asks the Court to reconsider its Order denying jurisdiction. In this most recent motion, Adam argues, for the second time, that a letter sent to him on February 15, 1989 by the FDIC did not constitute a "final determination" by that agency to deny Adam's claim for deposit insurance.[2] Additionally, Adam proffers a new argument: that the instant litigation began before FIRREA was enacted, and that § 1821(f)(4) of FIRREA does not apply retroactively to di-

vest this Court of jurisdiction over the deposit insurance claim. The Court considers these arguments below.

## II. *Discussion*

■ In support of his first argument, that the February 15, 1989 letter from the FDIC was not a "final determination" of his deposit insurance claim, Adam has submitted two additional letters, dated May 11, 1989, and July 14, 1989, respectively, both addressed to Adam and signed by various representatives of the FDIC. Adam asserts that, because he received these letters after receiving the February 15, 1989 letter originally submitted to the Court, the February 15 letter was not a "final determination" of his claim.

"The finality of an agency decision is determined by considering the practical effect of the determination." *Kershaw,* 987 F.2d at 1208. In the case at bar, the Court has reviewed all of the letters submitted by Adam, and finds nothing that would indicate that the original February 15, 1989 letter was not a "final determination" by the FDIC to deny Adam's deposit insurance claim. To the contrary, the February 15 letter from Mr. Richard Hanna is very clear in its language, stating:

I have made inquiry in order to determine whether there were any accounts in your name or that of your daughter at the time of the bank closing. I have been informed that there were none. Because there were no deposits on the books and records of the bank at the time of its closing, there are no insured deposits covered by the Federal Deposit Insurance Act. Also, because there are no deposits, there is nothing to release.

The two subsequent letters submitted by Adam appear to be responses to inquiries

1. The Fifth Circuit's original jurisdiction, pursuant to 12 U.S.C. § 1821(f)(4), over final agency determinations pertaining to deposit insurance was recently affirmed in *Kershaw v. RTC,* 987 F.2d 1206 (5th Cir.1993); and *Palermo v. FDIC,* 981 F.2d 843 (5th Cir.1993).

2. The Fifth Circuit in *Nimon* specifically held that the RTC and FDIC had not adopted formal procedures for determining deposit insurance claims, and accordingly found that a letter sent by RTC to the claimant stating RTC's intention not to pay deposit insurance was a final agency

determination for the purposes of § 1821(f). In response to this Court's original Order, Plaintiff FDIC submitted to the Court a letter from the FDIC, dated February 15, 1989, addressed to Adam, in which the FDIC informed Adam of its position, following a review of Community Bank's records, that Adam had no claim to deposit insurance on any of the accounts for which insurance had been claimed. The Court determined that, under *Nimon*, this letter constituted a "final determination" by the FDIC, making review appropriate only in the Court of Appeals.

addressed by Adam to Hanna and other FDIC personnel in an attempt to obtain information and materials on the accounts at issue. Adam has submitted no evidence that the FDIC investigation of his claim was re-opened or otherwise reconsidered. For this reason, the Court finds that the FDIC "... 'made a definitive statement of the agency's position' that is reviewable under section 1821(f)(4)" as of February 15, 1989, and, accordingly, Adam's objections in this regard are OVERRULED.

▆▆▆ Adam's second argument, that § 1821(f)(4) of FIRREA does not apply ret-roactively to divest this Court of jurisdiction over his claim, presents a rather novel question. Unfortunately, the legislative history of § 1821 sheds no light on this issue, and the Fifth Circuit has never addressed the question specifically. As general rule, how-ever, courts must apply the law in effect at the time they render a decision unless doing so would result in a manifest injustice or there is statutory direction or legislative his-tory to the contrary. *Bradley v. Richmond School Board*, 416 U.S. 696, 715–16, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974). In *Brad-ley*, the Supreme Court enumerated three factors that courts should consider in deter-mining whether a manifest injustice would result from applying a legislative enactment to cases pending prior to the enactment of the legislation. These factors include: (1) the nature and identity of the parties; (2) the nature of the rights affected; and (3) the impact of the change in law on pre-existing rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. The first factor weighs against a find-ing of manifest injustice in this case. In-deed,

> This is not simply a private case between individuals. It involves a federal agency appointed as a receiver of a failed bank in the midst of a national banking crisis. The *Bradley* Court's reliance on Chief Mar-shall's comment is instructive on this point: " 'It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of the parties, but in great national concerns ... the court *must* de-cide according to existing laws ...' " 416 U.S. at 712, 94 S.Ct. at 2016 (quoting *Unit-*

*ed States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)) (em-phasis supplied); *see id.* at 719, 94 S.Ct. at 2020.

*Wright*, 942 F.2d at 1096. The present case involves a federal agency, and the circum-stances leading to the enactment of FIRREA involved matters of considerable national concern. *Id.*

The second factor supports a determina-tion of manifest injustice only when retroac-tive application of the statute "would infringe upon or deprive a person of a right that had matured or become unconstitutional." *Brad-ley*, 416 U.S. at 720, 94 S.Ct. at 2020. The third factor focuses on "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.*

Neither of these concerns are present in the case at bar. Section 1821(f)(4) is a juris-dictional provision. Its effect in the present case is procedural, not substantive. The Fifth Circuit follows the general rule that amendments to statutes affecting only proce-dural rights apply to pending cases. *See NCNB Texas National Bank v. P & R In-vestments No. 6*, 962 F.2d 518, 519 (5th Cir. 1992). Applying the statute to the present case will not deprive any party of its day in court. Indeed, the only question is whether that day should dawn in a district court or an appropriate appellate court. "When Con-gress adopts statutory changes while a suit is pending, the effect of which is not to elimi-nate a substantive right but rather to change the tribunal which will hear the case, those changes—barring specifically expressed in-tent to the contrary—will have immediate effect." *Turboff v. Merrill Lynch, Pierce, Fenner & Smith*, 867 F.2d 1518, 1521 (5th Cir.1989).

This Court must apply procedures as they currently exist, not as they may have existed in the past when the FDIC was appointed receiver and this suit was filed. *See Bradley*, 416 U.S. at 715–16, 94 S.Ct. at 2018; *NCNB*, 962 F.2d at 519. The procedure outlined in § 1821(f)(4) and clarified in *Nimon* states that jurisdiction over claims relating to a final determination by the FDIC concerning deposit insurance properly lie in the court of

appeals. The Court is also persuaded that this provision applies in the present case. There is nothing in either the legislative history or the case law suggesting a contrary result.

This interpretation is consistent with other provisions of FIRREA which have been applied to claims pending before its enactment. The Fifth Circuit, for example, has consistently held that § 1819, which was amended by FIRREA to provide for federal jurisdiction over suits in which the FDIC is a party, applies to cases pending before its enactment. *See Dalton v. FDIC,* 987 F.2d 1216 (5th Cir.1993); *Walker v. FDIC,* 970 F.2d 114, 120 (5th Cir.1992); *NCNB Texas National Bank v. P & R Investments No. 6,* 962 F.2d 518, 519 (5th Cir.1992); *FSLIC v. Griffin,* 935 F.2d 691, 695 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); *Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205, 207 (5th Cir.1989). Similarly, some circuits have held that § 1823(e),[3] which FIRREA applied to the FDIC in its receivership capacity, affects all cases pending as of FIRREA's passage. *See FDIC v. Wright,* 942 F.2d 1089, 1095–97 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *Twin Construction, Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 381–82 (11th Cir. 1991); *FDIC v. Kasal,* 913 F.2d 487, 493 (8th Cir.1990).

In light of these authorities, the Court finds that the jurisdictional provision § 1821(f)(4) of FIRREA applies retroactively to this case, and that Defendant Adam's counterclaim for deposit insurance is therefore properly adjudicated in the United States Court of Appeals for the Fifth Circuit.

### III. ORDER

For the foregoing reasons, Defendant and Counter–Plaintiff Altaf Adam's Motion to Reconsider Order Denying Jurisdiction (Document No. 59) is DENIED, and the Final Judgment and Order of Dismissal for Want of Jurisdiction, entered by this Court on January 7, 1993, stands.

---

**3.** This is a codification of the doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62

The Clerk shall notify all parties and provide them with a true copy of this Order.