**Timothy A. KREBS, Kathleen A. Krebs and Edgewater Center Corporation, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Plymouth Five Cents Savings, a Massachusetts corporation, Defendant.**

No. 92–405–CIV–FTM–17(D).

United States District Court, M.D. Florida, Tampa Division.

March 31, 1994.

---

432

Robert Edwin Turffs, Kanetsky, Moore & DeBoer, P.A., Venice, FL, for Timothy A. Krebs, Kathleen A. Krebs, Edgewater Center.

David Joseph Tipton, Shea & Gould, Bradenton, FL, for FDIC, as Receiver for Plymouth Five Cents Savings, a Massachusetts corporation.

Louis Joseph Shaheen, Jr., Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, FL, for Plymouth Five Cents Sav. Bank, a Massachusetts corporation, Plymouth Five Cents Sav. Mortg. Co.

William Joseph Fuller, III, Sarasota, FL, for Davison & Krebs Architects, P.A., T.A. Krebs Co., Inc.

Robert J. Gill, Isphording, Korp, Payne, Muirhead, White & Horlick, Sarasota, FL, Donald F. O'Connell, O'Connell, Berg & Douglas, Venice, FL, for Babe's Plumbing, Inc.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendant Federal Deposit Insurance Corporation's ("FDIC") motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. FDIC seeks entry of summary judgment in its favor against Plaintiffs as to the Plaintiffs' "remaining claims" as alleged in their complaint and as to FDIC's counterclaims. Defendant's motion for summary judgment was filed January 18, 1994 (Dkt. 29). Defendant's memorandum in support was also filed January 18, 1994 (Dkt. 30). Plaintiffs' response to Defendant's motion for summary judgment was filed February 18, 1994 (Dkt. 33).

## PROCEDURAL BACKGROUND

This cause was originally brought in the Circuit Court for Charlotte County, Florida, as a seven count complaint against Plymouth Five Cents Savings ("Plymouth") and Plymouth Mortgage Company arising out of a construction loan agreement. Plymouth counterclaimed for mortgage foreclosure, damages under the Note, and damages under the Guaranties. By order of the Circuit Court, Judge Pellecchia presiding, summary judgment was entered in favor of Plymouth and against the Plaintiffs on five of the seven counts. The remaining counts, I and II were for breach of contract and promissory estoppel respectively.

Plaintiffs, in count I, assert that Plymouth was contractually obligated to provide permanent "end loan" financing to condominium purchasers as part of the construction loan agreement between the parties. Additionally, count I asserts that Plymouth converted $50,000.00. In count II, Plaintiffs assert that Plymouth made verbal representations, assurances, and promises that obligated it to provide the end loan financing.

On September 19, 1992, the Commissioner of Banks of Massachusetts took possession of Plymouth and appointed FDIC as liquidating agent to act as receiver of Plymouth. FDIC as receiver of Plymouth was then substituted as the party Defendant and counterclaim Plaintiff in the present action. In December, 1992, FDIC removed the action from State Court to this Court. FDIC now seeks entry of summary judgment on the two remaining counts and on its counterclaims.

## FACTUAL BACKGROUND

Most of the facts underlying this cause are not in dispute; any disputed issues of fact are presented in the light most favorable to the Plaintiff as the non-moving party. Plaintiff Tim Krebs applied to Plymouth for a construction loan to build a commercial condominium project located in Englewood Florida. The project was to be known as the Edgewater Center. On March 11, 1988, Plymouth sent Krebs a "letter of interest" for the construction loan and development of

Edgewater Center. The construction loan closed on July 22, 1988. Krebs executed six documents evidencing the parties' loan agreement:

1) A construction Loan Agreement (also executed by Plymouth Mortgage Co.);

2) A promissory Note in the original principal amount of $3,500,000.00;

3) A first Mortgage securing the Promissory Note which was recorded in Official Record Book 987 at Page 1103 of the Public Records of Charlotte County, Florida;

4) A Security Agreement securing the Promissory Note;

5) As Assignment of Rents, Profits and Contracts securing the Promissory Note;

6) A UCC–1 Financing Statement recorded in the Public Records of Charlotte County, Florida and filed with the Florida Secretary of State.

Also on July 22, 1988, Plymouth Mortgage Co. assigned the above loan documents to Plymouth. On the same date, counterclaim defendants Davison & Krebs Architects, P.A., T.A. Krebs Co., Inc., and Kathleen A. Krebs executed Guaranties of the Promissory Note.

As a "precondition" to the loan, Plymouth required that thirty-two (32) of the sixty-four (64) condominium units had to be pre-sold with either a permanent mortgage commitment from Plymouth or another bona fide financial institution. Before closing, the Bank's attorney determined that the preconditions were met.

Plaintiffs assert that Plymouth intended to provide end loans at Edgewater Center although it never specified how many loans it would fund. The letter of interest stated in pertinent part: "Thirty two (32) units of the sixty four (64) units are to be pre-sold prior to closing with permanent mortgage commitment from the Bank or a bona fide financial institution...." Apparently, Plymouth did in fact accept applications for end loans for the purchase of individual condominium units at Edgewater Center. Ultimately in 1990, Plymouth decided that it would not provide any end loan financing at the Edgewater Center. Plaintiffs claim that the bank, at the time of closing, had *committed* to Krebs that it would provide some non-specific number of end loans and that its failure to fund any end loans resulted in the project's loss of financial viability and ultimate failure.

Plaintiffs are unable to point to any specific documentation, or written agreement or promise by Plymouth that demonstrates a *commitment* to fund the end loans. The executed loan documents mentioned above do not indicate that Plymouth *promised* to make any end loans. Additionally, the quoted language from the letter of interest does not reveal a contractual obligation on the part of Plymouth to fund any end loans. Plaintiffs rely on Plymouth's alleged verbal representations, assurances and promises as the basis for their claim.

The parties do not dispute that Plymouth funded the full $3,500,000.00 construction loan. The parties also do not dispute that Plymouth did not fund any end loans.

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Ry. Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment. The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "In our view the plain language of Rule 56(c) mandates the entry of a summary judgment after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and

by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct at 2553.

## DISCUSSION

### COUNTS I AND II OF PLAINTIFFS' COMPLAINT

 In its motion for summary judgment Defendant relies principally on the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). Under the *D'Oench, Duhme* [1] doctrine the FDIC may avoid certain claims, counter claims and defenses. *See FSLIC v. Two Rivers Associates*, 880 F.2d 1267, 1274 (11th Cir.1989). The doctrine is applicable to the FDIC in both its corporate and receivership capacities. *Vernon v. R.T.C.*, 907 F.2d 1101, 1106 (11th Cir.1990). Application of the *D'Oench, Duhme* doctrine bars a private party's recovery on an unwritten agreement even if the private party relied on the bank's misrepresentations, and is completely innocent of any bad faith, recklessness or negligence. *FSLIC v. Gordy*, 928 F.2d 1558, 1566 (11th Cir.1991). [2]

Similarly, 12 U.S.C. § 1823(e) equips the FDIC with a formidable tool for defeating unwritten side agreements asserted by private parties. As amended by Section 217 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183, 12 U.S.C. § 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution,

shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

 Section 1823(e) may be properly regarded as the statutory counterpart of the *D'Oench, Duhme* doctrine. *FSLIC v. Gordy*, 928 F.2d 1558, 1562 (11th Cir.1991). However, the common law *D'Oench, Duhme* doctrine reaches somewhat further; § 1823(e) applies only to "agreements" whereas the *D'Oench, Duhme* doctrine may be used to defeat any unrecorded scheme or arrangement. *See FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986); *FDIC v. Morley*, 867 F.2d 1381, 1390 n. 8 (11th Cir.) *cert. denied*, 493 U.S. 819, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989).

In applying the *D'Oench, Duhme* doctrine the Eleventh Circuit held in *Baumann, supra:*

In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records. *Baumann*, 934 F.2d at 1515 (citations omitted).

*Baumann v. Savers Federal Sav. & Loan Assoc.*, 934 F.2d 1506 (11th Cir.1991).

---

1. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 *reh'g denied*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942). In *D'Oench Duhme* the United States Supreme Court determined that secret agreements, designed to deceive (or which tend to deceive) public authorities and/or creditors, cannot be asserted as a defense against the FDIC in its corporate capacity to collect on a note. The doctrine has since been significantly expanded.

2. Some jurisdictions have suggested that there must be at least some culpable conduct on the part of the obligor for the doctrine to apply. *See Oklahoma Radio Associates v. Magnolia Broadcasting Company, Inc.*, 987 F.2d 685, 694 (10th Cir.1993) (disagreeing with *Gordy*'s interpretation of *Langley*).

■ Krebs correctly asserts that the *D'Oench, Duhme* doctrine should not apply to the assertion of defenses based on a bilateral obligation appearing in the bank's records. *Twin Construction, Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 383 (11th Cir.1991). Where the FDIC is on notice of the bank's obligations based upon the bank's records the *D'Oench, Duhme* doctrine is inapplicable. Krebs argues that because Plymouth signed the construction loan agreement that bilateral obligations arose. However, Krebs misconstrues the application of the "bilateral obligation" exception to the doctrine on the facts in the immediate case; it is not the existence of just any bilateral obligation that precludes the doctrine's application. The bank's "obligation," on which Krebs bases his defenses and claims must appear in the bank's records such that the FDIC is on notice of the particular obligation. The Eleventh Circuit, in *Two Rivers, supra,* 880 F.2d at 1275, analyzed the rule as follows:

> As the D'Oench, Duhme Court held, the federal common law protects the FDIC from misrepresentations as to the financial conditions of the institutions which it insures. In Langley, [*Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) ] the Supreme Court emphasized that the purpose of section 1823(e), and by implication the D'Oench, Duhme doctrine, is to allow the FDIC to rely on bank records both when insuring the bank and when taking over a failed bank. The Court stated that "[n]either the FDIC nor the state banking authorities would be able to make a reliable evaluation if bank records contained seemingly unqualified notes that are in fact subject to *undisclosed conditions.*" If however, the records of a bank evidence *all* the obligations of the bank, the regulating authority will not be deceived. Thus, D'Oench, Duhme does not bar the assertion of defenses based on a bilateral obligation which appears in the bank's records. (Citations omitted and emphasis added).

Plymouth assumed some obligations when it signed the construction loan agreement.

For example, it committed to fund the construction loan, which it did. However, the purported obligation to fund some non-specific number of end loans at best may be properly characterized as an "undisclosed condition." This "obligation" does not appear in the bank's records; thus it may be inferred that a regulating authority would be deceived by this undisclosed condition. In this circumstance the *D'Oench, Duhme* doctrine clearly applies and the exception (where bilateral obligations exist) is inappropriate.

■ In responding to interrogatories propounded by Plymouth, Krebs identified three documents that purportedly demonstrate a promise by Plymouth to provide end loan financing to ultimate purchasers, the three documents are:

A) The March 11, 1988 letter of interest from Plymouth to Krebs;

B) The April 8, 1988 letter from Krebs to Plymouth; and

C) A copy of a loan application from Plymouth given to each prospective buyer as directed by Plymouth.

Both the second and third documents clearly fail the second requirement of § 1823(e). Drawing inferences in favor of Krebs as the non-moving party, the March 11, 1988 letter at best indicates only Plymouth's intent to provide some non-specific number of end loans; it does not unambiguously obligate Plymouth to make even one end loan. This is not enough to defeat application of the *D'Oench, Duhme* doctrine as a matter of law.

Additionally, the undisputed facts reveal that Plymouth did not convert the $50,000.00 deposit placed toward the purchase of Units 4A and 4B of the Edgewater Center.[3] The Court finds that Defendant FDIC is entitled to entry of summary judgment as to Plaintiffs' two remaining claims.

## FDIC'S COUNTERCLAIMS

■ As previously stated, FDIC also seeks entry of summary judgment as to its counterclaims for mortgage foreclosure, damages under the Note, and damages under the

---

**3.** Plaintiffs abandoned this contention in their response to Defendant's motion for summary judgment.

Guaranties. There is no factual dispute as to the payment default and the failure to complete the construction on time as required by the construction loan agreement. Moreover, by affidavit, FDIC has established the amounts due and owning under the Note, Mortgage and Guaranties. Krebs has not come forward with any affidavit or other testimony to indicate any disputed factual issues with regard to the essential elements of FDIC's counterclaims. However Krebs has asserted six affirmative defenses:

(1) Plymouth's dominion and control over Krebs' business;

(2) Plymouth's taking of additional security without consideration;

(3) Fraudulent inducement;

(4) Breach of fiduciary duty;

(5) Negligent monitoring of the transactions and negligent failure to cooperate in marketing the property;

(6) Duress.

The Court is satisfied that application of the *D'Oench, Duhme* doctrine and § 1823(e) also defeats these affirmative defenses. *See Baumann, supra.* In the absence of any genuine issue of material fact, FDIC is also entitled to entry of summary judgment on its counterclaims.

The Court finds that Defendant has sustained its burden of demonstrating that there are no genuine issues of material fact and that it is entitled to entry of summary judgment as a matter of law. Accordingly, it is

ORDERED that Defendant's motion for summary judgment is **GRANTED**. The Clerk shall enter a final judgment in favor of Defendant.

**DONE** and **ORDERED.**