**Michael J. CAPIZZI, Plaintiff, Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION, etc., et al.,
Defendants, Appellants.**

No. 90–2215.

United States Court of Appeals,
First Circuit.

Heard April 2, 1991.

Decided June 19, 1991.

Daniel H. Kurtenbach, Counsel, with whom Ann S. DuRoss, Asst. Gen. Counsel, Joan E. Smiley, Sr. Counsel, Federal Deposit Ins. Corp., William L. Patton, Robert J. Stillman and Ropes & Gray, were on brief, for appellant Federal Deposit Ins. Corp.

David J. Fine, with whom David J. Fine and Associates, was on brief, for appellee.

Before BREYER, Chief Judge, and TORRUELLA and CYR, Circuit Judges.

BREYER, Chief Judge.

When the Federal Deposit Insurance Corporation ("FDIC") becomes a receiver of a financially troubled insured bank, it typically also becomes a party in state court suits by, and against, that bank. A special federal statute permits the FDIC to remove most, but not all, of those suits to federal court. *See* 12 U.S.C. § 1819(b)(2). In particular, an exception in the removal statute says that the FDIC may not remove a case from state to federal court if the case satisfies three requirements, one of which is that it must be a case

in which only the interpretation of the law of such State is necessary.

*See* 12 U.S.C. § 1819(b)(2)(D)(iii).

This case involves a plaintiff whose case against a bank rests on claims that the bank violated state laws. The defendant (the FDIC) will claim that *federal* law provides it with a *defense* to what otherwise might be *state law* violations. Does such a case satisfy the quoted requirement? The district court thought that this, and the other requirements, were satisfied, and it held that the FDIC could not remove the case from state to federal court. We disagree about the application of this third requirement; and we therefore reverse the district court's determination.

I

*Background*

The procedural background of this case is fairly simple. In March 1990, Michael Capizzi, a real estate developer, sued the First American Bank in a Massachusetts

state court. His suit rested upon state contract law, state unfair trade practice law, and state law governing the obligations of fiduciaries. He claimed that the bank had violated those laws when it made, and then broke, various promises that it had made to lend him more money, or to provide better (or additional) financing arrangements.

In October 1990, while the Capizzi suit was pending, the FDIC became First American Bank's receiver. The FDIC became a party to the Capizzi suit, and, in November, it removed the Capizzi suit to federal court. The district court decided that the case fell within the removal statute's exception, and it ordered the case remanded to state court. The FDIC has appealed that decision to us under a special provision of the removal statute that permits such appeals. *See* 12 U.S.C. § 1819(b)(2)(C) (the FDIC "may appeal any order of remand").

The special FDIC removal statute, in subsection A, says:

> Except as provided in subparagraph (D), all suits of a civil nature ... to which the [FDIC] ..., in any capacity, is a party shall be deemed to arise under the laws of the United States.

12 U.S.C. § 1819(b)(2)(A); *cf.* 28 U.S.C. § 1331 (providing federal jurisdiction for cases "arising under" federal law). The same statute, in subsection B, says:

> Except as provided in subparagraph (D), the [FDIC] ... may, without bond or security, remove any action ... from a State court to the appropriate United States district court.

12 U.S.C. § 1819(b)(2)(B). The statute's exception, contained in "subparagraph (D)," states:

> (D) STATE ACTIONS.... any action—
> (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockhold-

ers by the State insured depository institution; and
> (iii) in which only the interpretation of the law of such State is necessary, shall not be deemed to arise under the laws of the United States.

12 U.S.C. § 1819(b)(2)(D). The language of (D), the subparagraph containing the exception, makes clear that it applies only when all three of the listed conditions are met. The dispositive question on this appeal, as we have said, focuses upon the meaning of the third requirement, namely the requirement that the "action" must be one "in which only the interpretation of the law of such State is necessary."

## II

### The Meaning of the Requirement

According to the FDIC, it is fairly obvious that this case does not satisfy the third requirement. The FDIC says (and the plaintiff does not deny) that it will assert a federal law defense to the plaintiff's state law claims. It will assert what is known as a *D'Oench* defense, a defense named after a famous Supreme Court case, *D'Oench, Duhme, & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and which is now codified in a federal statute. *See* 12 U.S.C. §§ 1821(d)(9)(A), 1823(e). That federal statute says that any agreement that would "diminish or defeat" the FDIC's "interest" in "any asset" is not "valid against" the FDIC unless (a) it is "in writing," (b) it was "executed" at a particular time that the statute describes, (c) it was "approved" by the bank in a particular way that the statute describes, and (d) it is "an official record" of the bank. Capizzi's suit to force the bank to live up to certain promises that Capizzi says it made—promises that will likely tend to lessen the value of the FDIC's "interest" in the bank's assets—may well turn on whether or not the *D'Oench* statute's conditions are satisfied. Since that statute is a federal statute, how then, asks the FDIC, can Capizzi possibly claim that his is a case "in which *only* the interpretation of the law [of Massachusetts] is necessary?"

Mr. Capizzi's argument, which the district court accepted, is that the words "only the interpretation of [state law] is necessary" mean "only necessary *insofar as the plaintiff's complaint* is concerned." He points out that courts have interpreted in just this way the federal statute that provides federal court jurisdiction in cases "arising under" federal law. In deciding whether or not a particular case "arises under" federal law, a court will look only at a plaintiff's ("well-pleaded") complaint; it will not consider possible defenses. Thus, if a plaintiff's complaint asserts only state law claims, the case does not "arise under" federal law, even if the outcome of the case turns on a federal law defense. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Louisville & N. R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Mr. Capizzi says that the courts should interpret the language here at issue similarly, *i.e.*, the courts should interpret it as embodying the "well-pleaded complaint" rule.

In our view, however, the language here at issue does *not* instruct the courts to look only to the complaint. Rather, it intends the courts to consider the case as a whole— complaint and likely defenses as well. We reach this conclusion for several reasons.

First, the statutory provision before us does not use language that says, or implies, that a court should look only to a complaint. In this respect it differs from the jurisdictional "arising under" statute. Linguistically speaking, a case in which a plaintiff asserts a state law claim seems to *"arise under"* state, not federal, law, despite the presence of a federal defense. But, linguistically speaking, it is far more difficult to say that such a case is one where *"only* the interpretation of state law is necessary."

Second, the history of the statute's language tends to support the FDIC's interpretation. Until 1989 the FDIC removal statute used significantly different language to define the scope of the removal exception. That predecessor statute created a removal right by stating that suits in which the FDIC was a party were "deemed to arise under the laws of the United States." It then created an exception to the FDIC's right to remove by stating that

> any such suit to which the [FDIC] ... is a party in its capacity as a receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank *under* State law shall not be deemed to *arise under* the laws of the United States.

12 U.S.C. § 1819 (1988) (emphasis supplied) (current version at 12 U.S.C. § 1819(b)(2)(1989). In 1987, when the Seventh Circuit interpreted similar language in a similar statute, the court held that it embodied a "well-pleaded complaint" rule largely because it contained the word "under." It wrote that the similar statute's similar exception applied not to a "suit ... which *involves* only state law," but to a "suit ... which involves only the rights or obligations ... *under* State law." *Federal Savings and Loan Ins. Corp. v. Ticktin*, 832 F.2d 1438, 1445 (7th Cir.1987), *rev'd on other grounds*, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989) (emphasis supplied); *accord Federal Savings and Loan Ins. Corp. v. Capozzi*, 855 F.2d 1319, 1324 (8th Cir.1988). The court's emphasis is understandable given the role that the word "under" plays in the jurisdictional "arising under" statute. When Congress enacted the present statute, it deleted the word "under." Given the significant legal history attached to the use of that word, Congress's deletion suggests rejection of the "well-pleaded complaint" rule.

Third, although we have found no legislative history addressed specifically to the interpretation of the language before us, Congress's more general objectives in enacting the banking statute that contains this language support our interpretation. Congress passed that statute in part to help the FDIC combat improper banking practices. *See* 12 U.S.C. § 1811 note; Gail & Norton, *A Decade's Journey From "De-*

regulation" to "Supervisory Reregulation": The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 45 Bus.Law. 1103, 1105 (1990)(FIRREA "granted the FDIC its full 'wish list' for enhancement of regulatory enforcement powers"). It expanded the FDIC's powers, and, in various ways, it expanded federal jurisdiction. See Federal Deposit Ins. Corp. v. State Bank of Virden, 893 F.2d 139, 142 (7th Cir.1990) (noting FIRREA's enlargement of federal jurisdiction over FDIC cases). The D'Oench defense helps the FDIC protect a bank's assets by insisting upon documentation of claims. That assistance seems important as a practical matter, for suits involving D'Oench defenses are fairly common. Using Westlaw, we have found 759 federal cases in the past five years in which the FDIC has been a party. Of those cases, 150 mention D'Oench; 57 explicitly make reference to the "D'Oench defense" now codified at 12 U.S.C. § 1823(e). These numbers show that perhaps anywhere from nearly 10 percent to about 20 percent of cases over the last five years in which the FDIC has been a party has involved the D'Oench defense in some manner. Given the practical importance of the defense, and Congress's general objectives in enacting the statute, the change in language before us would seem intended.

Fourth, the two published decisions that we have found on the legal issue before us reach the same result as do we. See Lazuka v. Federal Deposit Ins. Corp., 931 F.2d 1530, 1533 (11th Cir.1991); Perini Corp. v. Federal Deposit Ins. Corp., 754 F.Supp. 235, 237–38 (D.Mass.1991).

Finally, we recognize one contrary consideration. Our interpretation of the statute will require a district court, when the FDIC removes a case from state court, to examine more than the complaint filed in the record. It will have to look to defenses as well; it will have to determine what they are; and it will have to gauge their likely significance. We recognize that sometimes this may be fairly difficult; sometimes the FDIC may not even have filed an answer in the case. But, in the ordinary case this task should prove fairly easy. Cf. Mesa v.

California, 489 U.S. 121, 130, 109 S.Ct. 959, 965, 103 L.Ed.2d 99 (1989) (federal officer may remove to federal court under 28 U.S.C. § 1442 where colorable federal defense raised); Willingham v. Morgan, 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969) (same). We doubt that district courts, or courts of appeals, will insist upon too detailed an analysis at what will normally be a very preliminary stage of the case's history. Cf. 14A Wright, Miller and Cooper, Federal Practice and Procedure § 3734 at 543 (even under well-pleaded complaint rule "in practice, the federal courts do not limit their inquiry to the face of plaintiff's complaint, but rather consider the facts disclosed on the record as a whole in determining the propriety of removal.") And, overall, we do not think the added practical burdens significant enough to imply, in the face of the statute's language and its history, that Congress intended that language to embody the "well-pleaded complaint" rule.

We conclude that the language of the exception's third requirement does not embody the "well-pleaded complaint" rule and the determination of the district court is

*Reversed.*