David BATEMAN, Plaintiff, Appellee,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.,
Defendants, Appellees.

Everett N. Dobson & Sons, Inc.,
Party-in-Interest, Appellant.

No. 91–1832.

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1992.

Decided June 30, 1992.

George F. Burns with whom A. Robert Ruesch, Lorna J. Harmuth, and Amerling & Burns, Portland, Me., were on brief for appellant.

Christopher J. Bellotto, Counsel, with whom Ann S. DuRoss, Assistant Gen. Counsel, and Colleen B. Bombardier, Senior Counsel, Washington, D.C., were on brief for defendant, appellee, F.D.I.C.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

State laws normally give a contractor who works on a piece of property a lien against the property (called a "mechanic's lien") to guarantee payment for its work. Such a lien may have priority over even a *pre-existing* mortgage, *i.e.*, a mortgage created some time before (perhaps years before) the contractor performed the work. Under Maine state law a contractor may obtain a mechanic's lien if (among other things) the contractor carries out the work either (1) "by virtue of a contract" with the owner, say, a bank that holds a pre-existing mortgage, or (2) with the *"consent"* of the owner. Me.Rev.Stat.Ann. tit. 10, § 3251 (emphasis added).

The issue before us on this appeal involves the relation between a mechanic's lien and a pre-existing mortgage, in a special context—the context of a federal takeover of a state bank. A bank, holding such a mortgage, failed. The Federal Deposit Insurance Corporation (FDIC) became the bank's receiver. We must decide whether this federal takeover makes a difference to the priority (over a pre-existing mortgage) that a mechanic's lien (obtained with the bank's "consent") might otherwise enjoy. The FDIC believes that a federal statute (which we shall call the *"D'Oench, Duhme* statute") requires an affirmative answer to this question. That statute makes invalid any *"agreement* which tends to diminish or defeat the interest" of the FDIC unless the "agreement" is in writing (and satisfies certain other requirements). 12 U.S.C. § 1823(e) (emphasis added) (codifying common law doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)); *see also* 12 U.S.C. § 1821(n)(4)(I). Thus, if what state mechanic's lien law calls "consent" is what federal FDIC law calls an "agreement," then a contractor could not use an unwritten "consent" to obtain a mechanic's lien that defeats the FDIC's pre-existing mortgage-based interest. That is to say, the contractor, in effect, would lose the priority that state law otherwise would have given him.

We conclude, however, that the federal statute does not make the difference for which the FDIC argues. We believe that state law "consent" does not amount to federal law "agreement." Hence, the federal *D'Oench, Duhme* statute does not deprive the contractor of whatever priority state law would otherwise award him.

## I

### *Background*

#### A

#### Prior Proceedings

In 1986, several owners of a piece of property in Falmouth, Maine, borrowed money from the Maine National Bank. They gave the Bank a mortgage on the property. Later, Everett N. Dobson & Sons, Inc., the appellant here, performed construction work on that property. Apparently, no one paid Dobson for its work. Consequently, in November 1990, Dobson filed and recorded a mechanic's lien certificate in the county's registry of deeds, thereby perfecting its mechanic's lien, and

in December 1990 Dobson brought a lawsuit in state court to enforce that lien.

In the meantime the property's owners brought a different state court suit against the Bank (over matters that do not directly concern us now). The Bank counterclaimed in that action, seeking to foreclose on its mortgage. Dobson (who, by then, was a party in this second state court lawsuit as well) said that its mechanic's lien had priority over the Bank's pre-existing mortgage.

Two important events then occurred. First, in January 1991, the federal Comptroller of the Currency declared the Bank insolvent and appointed the FDIC as receiver. 12 U.S.C. §§ 191, 1821(c). Second, the FDIC (actually, a "bridge bank" to which the FDIC had transferred the Bank's assets, 12 U.S.C. § 1821(n)) removed this latter state court case to federal court. 12 U.S.C. § 1819(b)(2)(B). The district court eventually dismissed all claims except the Dobson/Bank claims involving the relative priority of Dobson's mechanic's lien and the Bank's pre-existing mortgage.

Eventually, the district court held that the Bank's pre-existing mortgage had priority over Dobson's mechanic's lien. It noted that the validity of Dobson's mechanic's lien depended upon its having obtained the Bank's "consent." It reasoned that, for purposes of federal law, the state law mechanic's lien "consent" in the Maine statute, Me.Rev.Stat.Ann. tit. 10, § 3251, amounts to an "agreement" in the *D'Oench, Duhme* statute, 12 U.S.C. § 1823(e). Hence, a contractor cannot enforce against the FDIC the priority that state law otherwise would give to its mechanic's lien unless the "consent" required by state law is in writing and meets several other federal, *D'Oench, Duhme* statutory requirements. Since both Dobson and the FDIC (which rejoined the lawsuit after the "bridge bank" failed) conceded that the "consent" that the Bank had given Dobson was not in writing, the district court concluded that Dobson could not have priority. And, the court granted summary judgment for the Bank. 766 F.Supp. 1194 (D.Me. 1991). Dobson now appeals.

## B

### The Federal Statute

The federal statute at issue codifies law that the Supreme Court set forth in *D'Oench, Duhme*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, a bank (which subsequently failed) tried to collect a debt that was evidenced by a writing. The defendant asserted that it had made a secret side-agreement with the bank, in which the bank promised not to collect the basic debt. The Supreme Court held that defense invalid because the secret side-agreement "was designed to deceive the creditors or the public authority, or would tend to have that effect." *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681. The Court estopped borrowers from asserting such defenses, in order to protect the FDIC from "misrepresentations and secret agreements which might result in [the FDIC] incorrectly assessing the value of bank holdings for institutions which it insures, makes loans, or acquires in its corporate capacity." *FDIC v. P.L.M. International, Inc.*, 834 F.2d 248, 252 (1st Cir. 1987).

Congress has embodied the *D'Oench, Duhme* estoppel doctrine in a statute and its subsequent amendments. As amended in 1989, the statute reads as follows:

> *No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—*
>
> (1) *is in writing,*
>
> (2) *was executed by the depository institution* and any person claiming an adverse interest thereunder, including the obligor, *contemporaneously with the acquisition of the asset* by the depository institution,
>
> (3) *was approved by the board of directors* of the depository institution or its loan committee, which approval shall be

reflected in the minutes of said board or committee, and

(4) *has been, continuously,* from the time of its execution, *an official record* of the depository institution.

12 U.S.C. § 1823(e) (amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989) (codified at 12 U.S.C. §§ 1811–1833e)) (emphasis added); 12 U.S.C. § 1821(n)(4)(I) (identical requirements in relation to assets held by bridge banks). This case concerns the amended statute. (Although we read that statute as informed by the purposes of *D'Oench, Duhme,* we recognize that the statute and the *D'Oench, Duhme* federal common law doctrine are not necessarily coextensive, and we do not mean to imply any particular limitation upon the reach of *D'Oench, Duhme* "common law." *See, e.g., In re 604 Columbus Avenue Realty Trust,* 968 F.2d 1332, 1344–1348 (1st Cir.1992)).

### C

### The State Mechanic's Lien Statute

■ Maine's law, as we have said, grants a lien upon property "to secure payment ... with costs" for whoever "performs labor or furnishes labor or materials" for work on that property, "by virtue of a contract with or *by consent of the owner."* Me.Rev.Stat.Ann. tit. 10, § 3251 (emphasis added). For purposes of this statute, "owner" includes a mortgagee (which typically holds legal, but not equitable, title to mortgaged property). *See Carey v. Boulette,* 158 Me. 204, 182 A.2d 473, 474 (1962).

■ The Maine courts have not defined "consent" precisely. They have said that an owner's knowledge that the work is being done, combined with the owner's failure to object, establishes "consent," but they have added the apparently qualifying statement that, "[w]hether more than such knowledge is necessary depends upon the circumstances of the case." *Id.* 182 A.2d at 475; *see Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co.,* 151 Me. 145, 116 A.2d 664, 667 (1955) ("Consent may be inferred from circumstances."); *see also, Parker–Danner Co. v. Nickerson,* 554 A.2d 1193 (Me.1989); *Fischbach & Moore, Inc. v. Presteel Corp.,* 398 A.2d 397 (Me. 1979). The state code, while not defining "consent" explicitly, does say what precludes consent: if a mortgagee files a written objection to the work, no lien can arise. Me.Rev.Stat.Ann. tit 10, § 3252. Having read the statute and cases, we believe that, under Maine law, a lienholder can show a mortgagee bank's consent by showing (1) the bank's knowledge that the work was going on, (2) the bank's failure to object, and (3) (perhaps) the absence of other special circumstances suggesting lack of consent.

### II

### The Law

■ We conclude that the state law "consent" here at issue does *not* fall within the scope of the federal *D'Oench, Duhme* statute's word "agreement;" hence, federal law does not deprive the state mechanic's lien of the priority that state law would ordinarily provide. We reach this conclusion for the following reasons.

First, the term "consent," *as the Maine courts have defined it,* does not bear much resemblance to the ordinary, English use of the word "agreement" (or even the ordinary, English use of the word "consent"). The term clearly does not mean "agreement" in the sense of forming a contract. The Maine statute specifically mentions such "contracts," and it then goes on to speak *separately* about "consent." Moreover, the Maine courts have held that a mortgagee "consent[s]" if the mortgagee simply *knows about* the contractor's work, and the mortgagee does *not* file a *written* objection (at least where other circumstances show nothing special). *See Carey,* 182 A.2d at 478. To know about a matter and not to object to that matter is not, in ordinary English, to "agree" to that matter; to the contrary, in ordinary English, one may know, and not object, but not *agree.*

■ Second, "consent," as described above, sounds more like a rule of property law than like an example of a private contract or agreement. It sounds like part of the state's mechanism for setting secured interest priorities. It sounds, for example, like a rule that says second mortgages take priority over *unrecorded* first mortgages *unless* the second mortgagee has *actual knowledge* of the first mortgage. *See, e.g.,* Herbert T. Tiffany, V *The Law of Real Property* § 1459 (3d ed.1939). Such rules (indeed, much of the body of state lien priority law) normally will apply to liens held by banks *after* FDIC receivership just as they applied *before* FDIC receivership. To state this legal principle more accurately, state law will govern matters such as priorities (within the context of a relevant federal program) unless a need for national uniformity, or a need to protect the federal program's objectives, outweighs the commercial confusion (and unfairness) that abandoning ordinary state property law might cause. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). And, courts have consistently held (or assumed), in the context of FDIC receiverships, that the balance of these factors dictates that state law govern the relative priority between state law mechanic's liens and ordinary bank-held mortgages. *FDIC v. Bowles Livestock Commission Co.,* 937 F.2d 1350, 1354 (8th Cir.1991); *Gayle Manufacturing Co. v. FSLIC,* 910 F.2d 574, 581 (9th Cir. 1990); *FDIC v. Key Biscayne Development Ass'n,* 858 F.2d 670, 674 (11th Cir. 1988); *Firstsouth, F.A. v. LaSalle National Bank,* 1991 WL 94537, *1, 1991 U.S. Dist. LEXIS 7224, *3 (N.D.Ill.1991); *E.W. Allen & Associates, Inc. v. FDIC,* 776 F.Supp. 1504, 1506 (D.Utah 1991); *Yankee Bank for Finance & Savings, FSB v. Task Associates, Inc.,* 731 F.Supp. 64, 69 (N.D.N.Y.1990); *Kile v. FDIC,* 641 F.Supp. 723 (E.D.Tenn.1986). *But see Raymond L. Sabbag, Inc. v. FDIC,* 1991 WL 146876, 1991 U.S.Dist. LEXIS 10657 (D.Mass.1991). Thus, the fact that the word "consent," as defined in state law, acts like a legal, priority-related presumption, makes it appropriate to have state law (rather than a federal statute) govern the priority question.

■ Third, the *D'Oench, Duhme* statute, viewed in terms of its purpose, does not require a court's reaching out to include this type of mechanic's lien "consent" within the statute's scope. The purpose of the *D'Oench, Duhme* statute, as the Supreme Court pointed out, *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987), is to help the FDIC accurately and speedily determine an insolvent bank's value. *See Timberland Design, Inc. v. First Service Bank for Savings,* 932 F.2d 46, 48 (1st Cir.1991); *see also Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Since the FDIC must try quickly to sell the "received" bank's assets and accompanying liabilities to a solvent bank (called a "bridge bank") while the FDIC itself retains (in its corporate capacity) unsalable assets and liabilities, it is important that FDIC officials, examining the insolvent bank's documents, feel they can rely, for valuation purposes, upon the bank's documents as meaning what they say. *See Langley,* 484 U.S. at 91, 108 S.Ct. at 401 (citing *Gunter,* 674 F.2d at 865). An FDIC official, looking through an insolvent bank's books the day of its collapse, and coming across a paper that says, for example, "John Doe promises to pay the Bank $5 million" must know (and know quickly) whether the Bank is $5 million richer, or whether some side-agreement with Doe means that Doe has to pay the bank only $1 million, not $5 million. That is why the statute says that any such side-agreement must be (1) in writing *and* (2) executed by the bank *and* (3) approved by the bank's board of directors, *and* (4) have been kept continuously in the bank's records. 12 U.S.C. § 1823(e).

Potentially prior *secured* interests, however, are not the *kinds* of interests that the FDIC examiner need (or would) necessarily rely upon the bank's documents to reflect. Such interests are not those *of* the bank; they are not contained in documents filed *with* the bank. Nor are they otherwise difficult to find. Indeed, like the mechan-

ic's lien here at issue, they are typically on file at local recording offices or available through checking with, say, the Internal Revenue Service (for tax liens). Thus, it is not surprising that courts have uniformly respected such secured-interest priorities, *whether or not* the bank has copies complying with *D'Oench, Duhme. See, e.g., Pima Financial Service Corp. v. Intermountain Home Systems, Inc.,* 786 F.Supp. 1551, 1561 (D.Colo.1992) (tax lien); *Federal Land Bank of Wichita v. Kipp,* 1988 WL 331661, 1988 U.S.Dist. LEXIS 17506 (D.N.M. Feb. 19, 1988) (first mortgage); *United States v. One Hughes Helicopter,* 595 F.Supp. 131 (N.D.Tex.1984) (forfeiture provision).

Fourth, as a practical matter, a rule that brings "consent" within the scope of the *D'Oench, Duhme* statute would require contractors, performing work on property, to obtain the written consent of each mortgagee bank and then have that mortgagee bank keep the written consent, after director approval, on file. Such a rule would reverse Maine law's presumption that a mortgagee bank (with knowledge of pending construction) must *object in writing* to stop the creation of a mechanic's lien with priority. Me.Rev.Stat.Ann. tit. 10, § 3252. Given the recording requirement for mechanic's liens, there is no apparent need to reverse the presumption or to remove the protection that it offers contractors and their employees.

On the other hand, we concede one, fairly strong argument for the FDIC's position. The ordinary English meaning of the word "consent" is very similar to the ordinary English meaning of the word "agreement." Nonetheless, we have considered several strong arguments against the FDIC's position, namely (1) the fact that the Maine courts have defined the word "consent" in a special way; (2) that the term embodies a priority-creating presumption of a sort normally outside the federal statute's scope; (3) that the federal statute's purpose does not require bringing this kind of "consent" within its scope; and (4) that doing so would produce impractical results. Weighing these arguments, we conclude that "consent" under the Maine statute is not

an "agreement" for purposes of the *D'Oench, Duhme* law. The grant of summary judgment for the FDIC must therefore be reversed, and this case must be remanded for the district court to determine whether or not, as a matter of Maine law, the Dobson mechanic's lien has priority over the Bank's mortgage now held by the FDIC.

*So ordered.*