March 2, 1993 UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-1876

BANK OF NEW ENGLAND OLD COLONY, N.A.,

Plaintiff, Appellant,

v.

R. GARY CLARK, TAX ADMINISTRATOR,
FOR THE STATE OF RHODE ISLAND

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Lawrence H. Richmond, Counsel, Federal Deposit Insurance

Corporation, with whom Ann S. DuRoss, Assistant General Counsel,

Colleen B. Bombardier, Senior Counsel, David N. Wall, Senior

Counsel, Federal Deposit Insurance Corporation, Mark A. Pogue,

Alfred S. Lombardi and Edwards & Angell, were on brief for

appellant Federal Deposit Insurance Corporation, as receiver for
New Bank of New England, N.A.
Bernard J. Lemos, Legal Officer (Taxation), with whom Marcia

McGair Ippolito, Chief Legal Officer (Taxation), was on brief for

appellee.

March 2, 1993

TORRUELLA, Circuit Judge. In this appeal we must

resolve a seemingly irreconcilable clash between two statutes.

One vests the Federal Deposit Insurance Corporation ("FDIC") with

the power to remove "any action, suit, or proceeding" to federal

court. 12 U.S.C. 1819(b)(2)(B). The other commands that the

district court "shall not" grant relief in cases involving issues

of state tax law. 28 U.S.C. 1341. In this case, the FDIC

removed a Rhode Island tax dispute to the district court, and the

district court remanded the case to the state court under 1341,

finding that the statute required abstention. Because we concur

with the district court's result, we affirm.

FACTS

Appellant bank claimed a refund of $419,025 on its 1987

Rhode Island Bank Institution Excise Tax Return. The Rhode

Island Tax Division, however, issued only a partial refund of

$285,347. The bank filed an administrative appeal for the

balance, but the partial refund was upheld. The bank then

resorted to the Rhode Island state court for relief, alleging

only state law grounds for relief.

In 1991, while that action was pending, the bank was

declared insolvent. The Comptroller of the Currency appointed

the FDIC as receiver and created a "bridge bank" to provide

continued service to the bank's former customers. The bridge

bank assumed the tax refund claim from the insolvent bank. When

the Comptroller later declared the bridge bank insolvent, the

FDIC as receiver took possession of the bridge bank's assets,

-3-

including the pending tax refund suit.

Pursuant to 1819(b)(2)(B),1 the FDIC removed the

pending state court suit to the federal district court in Rhode

Island.2 The state moved to remand or dismiss, arguing that

1341, otherwise known as the Tax Injunction Act ("the Act"),

required the federal court to remand the case to the Rhode Island

1 Section 1819(b) provides in relevant part:

(1) Status

The Corporation, in any capacity, shall
be an agency of the United States for
purposes of section 1345 of Title 28,
without regard to whether the Corporation
commenced the action.

(2) Federal court jurisdiction

(A) In general

Except as provided in subparagraph (D),
all suits of a civil nature at common law
or in equity to which the Corporation, in
any capacity, is a party shall be deemed
to arise under the laws of the United
States.

(B) Removal

Except as provided in subparagraph (D),
the Corporation may, without bond or
security, remove any action, suit, or
proceeding from a State court to the
appropriate United States district court.

It is undisputed that subparagraph (D) does not apply here.

2 Apparently the FDIC took this action one day before a
discovery hearing and three days before trial. The case was to
be heard together with a related case involving another Rhode
Island bank and the same counsel.

-4-

state court.3 The FDIC, in response, claimed that it was

exempt from the operation of the Act under the judicially-created

"federal instrumentalities" exception, which establishes that the

Act does not bar access to the federal courts by the United

States or its instrumentalities. A magistrate agreed that the

FDIC was a federal instrumentality exempt from the Act. On

review, however, the district court determined that (1) the FDIC

was not entitled to claim the federal instrumentality exemption;

(2) section 1819 vested the court with jurisdiction over the

matter; and (3) the Act nonetheless required the court to abstain

from deciding the case. The district court therefore remanded

the case to the Rhode Island state court, and this appeal

followed.

LEGAL ANALYSIS

I.

We begin by addressing the district court's

determination that the Act is an abstention statute, as opposed

to a jurisdictional statute. If the district court is correct in

this ruling, then the apparent conflict between the two statutes

is resolved by the workable solution that the district court

proposed. Unfortunately, we must conclude that the district

court erred in characterizing the Act as an abstention statute.

The Supreme Court has instructed us, and we have held,

3 The Act states that federal courts "shall not enjoin, suspend
or restrain the assessment, levy or collection of any tax under
State law where a plain, speedy and efficient remedy may be had
in the courts of such State." 28 U.S.C. 1341.

-5-

that the Act is "jurisdictional" in nature, and therefore serves

to oust the federal courts of jurisdiction in those cases which

fall within its reach. California v. Grace Brethren Church, 457

U.S. 393, 418-19 (1982) (because of Act, "no federal district

court had jurisdiction"); Trailer Marine Transport Corp. v.

Rivera V zquez, 977 F.2d 1, 4-5 (1st Cir. 1992) (Act is

"jurisdictional" and "not subject to waiver").

The policies behind the Act explain the need for a

strong limitation on federal jurisdiction in state tax cases.

With the Act, Congress sought "to protect tax collection as an

'imperative need' of government." Trailer Marine, 977 F.2d at 5

(quoting Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976)). By

divesting the federal courts of jurisdiction, Congress ensured

against interference "with so important a local concern as the

collection of state taxes." Grace Brethren Church, 457 U.S. at

408-09 (citing Rosewell v. LaSalle National Bank, 450 U.S. 503,

522 (1981)). It was the paramount importance of state taxation

to state governments that led Congress to restrict federal

jurisdiction.

Given this authority, the district court was wrong to

abstain. The distinction between abstention and jurisdiction is

important. When a court lacks jurisdiction, it has no authority

to grant relief; when a court abstains, it has authority to grant

relief but does not exercise it. The fact that the Act negates

jurisdiction creates an apparent conflict with the FDIC removal

statute, which grants jurisdiction.

-6-

II.

Before directing our attention to this conflict, we

must first determine whether the Act applies in this case.

Specifically, we must address whether the FDIC is a federal

instrumentality entitled to an exemption under the Act.4 On

this issue, we agree with the district court that the FDIC cannot

escape from the requirements of the Act due to its status as a

federal agency exempt from state taxation.

Though written in absolute terms, the Act does not

apply to every state tax case. The courts have recognized a

significant exception, the federal instrumentality exception,

which allows the United States and its instrumentalities to bring

suits on state tax issues in federal court in spite of the Act.

Department of Employment v. United States, 385 U.S. 355, 357-58

(1966). The exception arises out of the assumption that Congress

would not have denied the federal government access to federal

courts without a clear statement to that effect. Id.

Courts differ on whether the FDIC qualifies for the

exception. Compare Federal Deposit Insurance Corp. v. New York,

928 F.2d 56, 61 (2d Cir. 1991) (FDIC not federal instrumentality)

with Federal Deposit Insurance Corp. v. City of New Iberia, 921

F.2d 610, 613 (5th Cir. 1991) (FDIC is federal instrumentality).

See generally Pima Financial Service Corp. v. Intermountain Home

4 The parties agree that only state tax issues are involved in
this case, and do not seriously argue that Rhode Island courts
are inadequate under the Act. See Keating v. Rhode Island, 785

F. Supp. 1094, 1097 (D. R.I. 1992).

-7-

Systems, Inc., 786 F. Supp. 1551 (D. Colo. 1992) (cataloging FDIC

federal instrumentality cases; holding FDIC not federal

instrumentality).

In this circuit, we have outlined no "bright line" rule

for whether a particular agency is entitled to claim the

exception. Federal Reserve Bank v. Commissioner of Corporations

and Taxation, 499 F.2d 60, 64 (1st Cir. 1974). Rather, we have

instituted a flexible test in which "each instrumentality must be

examined in light of its governmental role and the wishes of

Congress as expressed in relevant legislation." Id. We find

that this test does not allow the FDIC to claim federal

instrumentality status.

The FDIC's governmental role in this case is minimal.

Rhode Island taxed a private bank, not the federal government.

The FDIC only became involved when the bank was declared

insolvent. As such, no issues of intergovernmental tax immunity

exist in the case. Furthermore, if successful, the benefits from

the refund claim will flow principally to the bank's creditors

and depositors, not to the federal treasury.

The relevant legislation does not indicate that

Congress intended to accord the FDIC federal instrumentality

status for the purposes of the Act. We note that 1819(b)(1),

titled "Status," only grants the FDIC agency status for the

purposes of 1345, not for all purposes. Section 1345, in turn,

creates "agency jurisdiction," a different statutory grant of

jurisdiction than the removal statute in question here. See

-8-

Federal Savings and Loan Insurance Corp. v. Ticktin, 490 U.S. 82,

85-87 (1989) (statutory grant of agency jurisdiction treated

differently than grant of "arising under" and removal

jurisdiction). In contrast, the Federal Savings and Loan

Insurance Corporation ("FSLIC"), the FDIC's predecessor, was

granted agency status for all purposes, including for the Act.

12 U.S.C. 1730(k)(1)(A) (repealed 1989).

It is apparent that Congress knew how to make an agency

a federal instrumentality in the present context. We therefore

must assume that Congress chose not to do so with the FDIC, as

the pertinent language is missing from the statute. Because the

FDIC cannot claim to be a federal instrumentality in this case,

the Act applies.

III.

Having determined that the Act applies in this

situation, we come to the apparent conflict between

1819(b)(2)(B) and the Act.5 For the FDIC to prove that the

1819(b)(2)(B) removal statute trumps the Act, it must show that

Congress clearly and manifestly intended the statute to be an

exception to the Act.6 This substantial burden arises out of

two sources.

5 As stated previously, 1819(b)(2)(B) allows the FDIC to
"remove any action, suit, or proceeding," while the Act commands
that the district court "shall not" adjudicate state tax issues.
See supra notes 1 and 3 for the full text of these statutes.

6 Alternatively it must show that the Rhode Island does not
provide a "plain, speedy and efficient remedy," as required under
1341. See supra note 4.

-9-

First, in Franchise Tax Board v. Construction Laborers

Vacation Trust, 463 U.S. 1 (1983), the Supreme Court noted that a

statute granting federal court jurisdiction over Employee

Retirement Income Security Act ("ERISA") cases only trumps the

Act in two situations. The party claiming federal court

jurisdiction can show that the state remedy is not speedy or

efficient, or the party can show that the jurisdiction statute

was intended to be an exception to the Act. While the Court did

not resolve this issue in the case, id. at 20 n.21, and its

statements were therefore dicta, we find its approach persuasive

in light of the strong policy embodied by the Act.

Second, the Court's statements in Franchise Tax Board

are consistent with the well-settled canon of statutory

interpretation disfavoring the repeal of a statute by

implication, especially if that statute is a long-standing one.

Andrus v. Glover Construction Co., 446 U.S. 608, 618 (1980). The

same principle applies to partial repeals. Kremer v. Chemical

Construction Corp., 456 U.S. 461, 468 (1982). As has been

frequently stated, there are

two well-settled categories of repeals by
implication -- (1) where provisions in
the two acts are in irreconcilable
conflict . . .; and (2) if the later act
covers the whole subject of the earlier
one and is clearly intended as a
substitute . . . . But, in either case,
the intention of the legislature to
repeal must be clear and manifest . . . .

United States v. Commonwealth of Puerto Rico, 721 F.2d 832, 836

(1st Cir. 1983) (citations omitted). The FDIC, as a consequence

-10-

of this canon and the Franchise Tax Board case, must show that

Congress clearly and manifestly intended to override the

provisions of the Act by passing the FDIC removal statute.

We turn first to the language of the removal statute to

determine what Congress intended. The mere fact that

1819(b)(2)(B) states that the FDIC may remove "all" actions

does not in itself demonstrate the clear and manifest intent of

Congress to trump the Act. See Moe v. Confederated Salish &

Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 472 (1976)

(conflict between Indian tribe removal statute and Tax Injunction

Act). Such language, rather, is consistent with a general grant

of jurisdiction which did not take into account the provisions of

the Act. Id.

The structure of 1819(b) does not demonstrate a clear

and manifest intent to override the Act. This lack of clear

intent is underscored by the contrast between the FDIC removal

statute, and the removal statute applicable to its predecessor,

the FSLIC. The FSLIC statute began by stating "[n]otwithstanding

any other provision of law . . .," manifesting a clear intent to

override any conflicting statutes in existence. The FDIC statute

contains no such clause. As we stated above, it is obvious that

Congress knew how to exempt the FSLIC from the operation of the

Act when it so desired. The absence of similar language in the

revisited statute indicates to us that Congress did not intend to

override the Act.

Congress has limited the FDIC's jurisdiction in other

-11-

ways. Agency jurisdiction, pursuant to 1345, is expressly

subject to the provisions of "other law." Assuming that the

federal instrumentality exception to the Act does not apply, the

Act would be such "other law" limiting the FDIC's access to the

federal courts. The structure of 1819(b) thus does not

demonstrate a clear and manifest intent to override the Act.

We turn now to the legislative history of the removal

statute for whatever light it may shed on the issue. In this

regard, the parties have directed us to, and we have found, no

reference in the relevant legislative history on how the removal

statute affects the operation of the Act. Indeed, there is no

reference to the Act in the extensive history of the Financial

Institutions Reform and Recovery Act ("FIRREA"), of which the

removal statute forms a part.

In support of its position that Congress intended the

removal statute as an exception to the Act, the FDIC directs us

to portions of the legislative history stating that the statute

expanded the scope of federal jurisdiction for the FDIC. Indeed,

we have already acknowledged this purpose in another context.

Capizzi, 937 F.2d 8, 10-11 (1st Cir. 1991) (FIRREA "expanded

federal jurisdiction" beyond previous removal provision). The

fact of expansion begs the question, however, of what, if any,

limits on federal jurisdiction exist. We must find that the

expansion specifically reverses the prohibition on federal

jurisdiction mandated by the Act for the FDIC to win. The

absence of such concrete evidence, however, convinces us that the

-12-

removal statute does not trump the Act.

Given the uncertainties we have found in the language,

structure and legislative history of 1819(b), we cannot say

that the statute clearly and manifestly evinces an intent to

trump the Act. We thus construe 1819(b) as subject to the

limitation on federal jurisdiction in the Act. As the district

court was correct in determining that this case belongs in state

court, we affirm.

Affirmed.

-13-