USCA1 Opinion

 

 April 1, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1683 LAURENCE ALBRIGHT, ET AL., Plaintiffs, Appellants, v. FEDERAL DEPOSIT INSURANCE CORPORATION, ETC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Michael E. Chubrich, with whom Eldredge, Chubrich & Harrigan was ___________________ _____________________________ on brief for appellants. Gregory E. Gore, with whom Ann S. DuRoss and Robert D. McGillicu- _______________ _____________ ____________________ ddy were on brief for appellees. ____ ____________________ ____________________ CYR, Circuit Judge. Plaintiffs-appellants, one hun- CYR, Circuit Judge. _____________ dred-sixty charter members of a defunct health club, challenge a district court decision granting summary judgment to defendants- appellees, various entities that later acquired interests in the real property upon which the health club facility was located. Finding no error, we affirm. I I BACKGROUND BACKGROUND __________ In 1987, Amoskeag Bank ("the Bank") loaned $7.5 million to Greenleaf Investment Group ("the Developer") to construct a commercial condominium and health club facility (the "Property") in Portsmouth, New Hampshire. The note was secured by a first mortgage on the Property. After the Developer completed con- struction in 1988, it "leased" the health club facility to a corporation called Greenleaf Sports and Fitness Club, Inc. ("the Health Club"), which sold long-term charter health club member- ships to appellants, at prices ranging from $2500 to $3500.1 In April 1990, the Developer defaulted on the note.2 The Bank later exercised its power of sale under the first mortgage, and the Property was acquired by appellee A.B. Club Holdings (- ____________________ 1The charter memberships entitled appellants to use the club facilities, subject to their payment of annual renewal fees substantially below the annual fee for non-"charter" members. 2The Developer eventually initiated a chapter 11 reorganiza- tion proceeding, which was later converted to chapter 7. There is no evidence that appellants filed proofs of claim in the bankruptcy proceedings. 2 "ABCH"), the Bank's wholly-owned subsidiary. The Health Club vacated the leased premises five months after the Developer's default, but the Bank and ABCH continued to operate a health club facility on the premises, with appellee Club Sports International ("CSI") as its managing entity. During a six-month transitional period following the Health Club's closure, appellants were permitted to use the health club facili- ties under the terms of their alleged Health Club contracts. In February 1991, however, CSI informed appellants that they must pay higher fees, equaling fifty percent of the fee for new club ___ members. Appellants promptly filed a three-count complaint in New Hampshire Superior Court against, inter alia, the Bank, ABCH, _____ ____ and CSI. Count 1 sought a judicial declaration that appellants held a "unique contractual property right" by virtue of their charter club memberships, and that appellees were either the Developer's successors-in-interest or its third-party benefi- ciaries, and therefore were contractually obligated to honor the charter membership contracts, see Cyr v. B. Offen & Co., 501 F.2d ___ ___ ______________ 1145, 1152 (1st Cir. 1974) (noting indicia of successor liability). Count 2 sought the imposition of a constructive trust upon all charter membership fees still held by appellees, on the ground that the Bank had been aware from the outset that the Developer used $200,000 of appellants' charter membership fees to repay its construction loan, in violation of the Devel- oper's contractual promise to appellants to segregate their fees 3 in a trust fund. Finally, Count 3 sought compensatory damages (or a refund of all membership fees) and/or treble damages for appellees' unfair and deceptive trade practices in willful violation of the New Hampshire Consumer Protection Act ("NHCPA"), see N.H. Rev. Stat. Ann 358-A:2, 358-A:10 (1993). The Bank's ___ motion to dismiss counts 1 and 3 for failure to state a claim was denied by the superior court.3 In October 1991, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC"), as receiver, removed the case to federal district court. See 12 U.S.C. ___ 1819(b)(2)(B) (1993). Appellants promptly moved for remand to the state court, arguing that resolution of the suit would require "only the interpretation of the law of [New Hampshire]." Id. 1819(b)(2) (D)(iii). FDIC opposed remand, citing its ___ intention to rely on various federal-law defenses, including the unenforceability of the alleged club membership contracts under D'Oench Duhme & Co. v. FDIC, 315 U.S. 447 (1942), as codified at ____________________ ____ 12 U.S.C. 1823(e), and FDIC's immunity from suit for compensa- tory damage claims under the NHCPA, cf. Timberland Design, Inc. ___ _______________________ v. First Serv. Bank for Sav., 932 F.2d 46, 50 (1st Cir. 1991) __________________________ (D'Oench defense may also foreclose tort-based claims against _______ FDIC based on "secret" agreements), and from "punitive" treble ____________________ 3The superior court granted the motion to dismiss Count 2 (constructive trust), citing appellants' failure to allege that the Bank owed appellants a fiduciary duty. As appellants have not reasserted their constructive trust claim, we disregard case law cited by appellants to the extent it relates to the imposi- tion of constructive trusts under New Hampshire law. See, e.g., ___ ____ Milne v. Burlington Homes, Inc., 117 N.H. 813 (1977). _____ ______________________ 4 damage awards under the NHCPA, see, e.g., FDIC v. Claycomb, 945 ___ ____ ____ ________ F.2d 853, 861 (5th Cir. 1991), cert. denied, 112 S. Ct. 2301 _____ ______ (1992). While the remand motion awaited decision, FDIC filed its motion for summary judgment. The district court later rejected a magistrate-judge's recommendation that the case be remanded to state court for lack of subject matter jurisdiction pursuant to 12 U.S.C. 1819(b)(2) (D)(iii),4 and granted FDIC's motion for summary judgment on the two remaining counts in appellants' complaint. Appellants appeal from the summary judgment order, and from the district court order denying their motions for reconsideration. II II DISCUSSION DISCUSSION __________ A. Removal Jurisdiction A. Removal Jurisdiction ____________________ Appellants argue that FIRREA 1819(b)(2)(D)(iii) ousts the district court of jurisdiction because their complaint alleged one dispositive state-law claim unaffected by any federal defense advanced by FDIC. Specifically, drawing on an oblique ____________________ 4As a threshold argument, appellants claim that the magistrate-judge's report and recommendation issued pursuant to a referral under 28 U.S.C. 636(b)(1)(A), rather than subsection 636(b)(1)(B), because a motion to remand to state court for lack of federal jurisdiction is "nondispositive." Appellants argue that the district court improperly reviewed the magistrate- judge's findings de novo, rather than for "clear error" or as __ ____ "contrary to law." We disagree. The magistrate-judge's report resolved no disputed jurisdictional facts. Instead, it dealt with a pure issue of law whether FDIC's anticipated defenses were legally sufficient to foreclose remand to the state court. Under either subsection 636(b)(1)(A) or (B), the recommended ______ __ conclusions of law were subject to de novo review by the district __ ____ court, and, in turn, by the court of appeals. 5 mention in Count I that their charter memberships confer a "unique contractual property right," appellants now argue that ________ these memberships are roughly akin to mechanic's liens under New Hampshire law. We have held that FDIC may not invoke the D'Oench Duhme _____________ defense to avoid certain state-law liens which attach to a failed bank's assets prior to FDIC's appointment as receiver. See ___ Bateman v. FDIC, 970 F.2d 924, 927 (1st Cir. 1992) (Maine mechan- _______ ____ ic's lien not an "agreement" within meaning of D'Oench doctrine). _______ In Capizzi v. FDIC, 937 F.2d 8 (1st Cir. 1991), however, we held _______ ____ that FIRREA 1819(b)(2)(D)(iii) embodies a deliberate congres- __________ ________ sional abrogation of the "well-pleaded complaint" rule, see ______ __________ ___ Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 __________________ _____________________________________ U.S. 1, 9-10 (1983) (defining phrase "arising under" federal law), which in other contexts permits a district court to invoke its nondiversity removal jurisdiction only if the complaint alone, without reference to the character of any anticipated _____ defense under federal law, discloses that the state-law claim implicates a substantial federal question. Capizzi, 937 F.2d at _______ 11 (noting that 1819(b)(2)(D) (iii) "expanded the FDIC's powers, and . . . federal jurisdiction") (emphasis added); see ___ _______ ____________ ___ Diaz v. McAllen State Bank, 975 F.2d 1145, 1149 (5th Cir. 1992); ____ __________________ Reding v. FDIC, 942 F.2d 1254, 1258 (8th Cir. 1991); Lazuka v. ______ ____ ______ FDIC, 931 F.2d 1530, 1535 (11th Cir. 1991). Thus, FIRREA ____ 1819(b)(2) (D)(iii) directs the district court "to consider the case as a whole complaint and likely defenses" and "to __ _ _____ 6 gauge [the] . . . likely significance" of those defenses. ______ ____________ Capizzi, 937 F.2d at 10, 11 (emphasis added); see Diaz, 975 F.2d _______ ___ ____ at 1149-50 ("[A]sserting a federal defense will not alone prevent remand . . . [,] the FDIC must assert a defense that raises colorable issues of federal law.") (emphasis added). _________ The district court relied on several reasoned grounds for its ruling disallowing appellants' motion for remand. We affirm on a singularly sufficient ground. The complaint asserts several alternative claims for relief. Even if their so-called property-right or "mechanic's lien" claim were sound on the merits, and further, assuming it were found invulnerable to the D'Oench Duhme defense by reason of the Bateman exception, appel- _____________ _______ lants also asserted willful violations of the NHCPA for which treble damages might be recoverable because of appellees' interim _______ refusal to permit them to use the health club facilities under the terms of their original membership contracts. In turn, the treble-damages demand under the NHCPA would implicate FDIC's two federal defenses to any NHCPA recovery. See Timberland Design, ___ _________________ 932 F.2d at 50; Claycomb, 945 F.2d at 861. On the other hand, if ________ appellants' "mechanic's lien" claim were found nonmeritorious, the court would be required to rule on their claim for compensa- tory damages for breach of their membership contracts, based on appellees' alleged liability as the contractual successors of the Developer or the Health Club. In the latter event, the court would be required to rule on the D'Oench Duhme defense. _____________ Finally, even at the preliminary jurisdictional stage, 7 FDIC's various federal defenses, see supra p. 4, and particularly ___ _____ its D'Oench Duhme defense, were more than colorable. See Bate- _____________ ____ ___ _____ man, 970 F.2d at 926-27 (under D'Oench Duhme, alleged "agreement" ___ _____________ must be in writing, executed by bank, approved by bank's board of directors, and kept continuously in bank records from date of execution). Even as late as summary judgment, for example, appellants had yet to produce a copy of the charter membership contract, let alone a copy of the construction loan agreement, although the former document presumably was within their control, and the existence and whereabouts of both documents form the crux _________ ___________ of their alleged contract, "equitable lien," and NHCPA claims. Moreover, given appellees' allegations that the Health Club was a corporate entity distinct from the Developer, and never directly ________ contracted with the Bank in any capacity, FDIC's claim that no written "agreement" appeared in the Bank's records on the date of FDIC's appointment is far from frivolous. The district court correctly denied the motion for remand. B. Summary Judgment B. Summary Judgment ________________ A summary judgment ruling is reviewed de novo, employ- __ ____ ing the same standards incumbent on the district court, and resolving all evidentiary issues in the light most favorable to appellants. Gaskell v. The Harvard Coop. Soc'y, 3 F.3d 495, 497 _______ _______________________ (1st Cir. 1993).5 ____________________ 5The district court made four relevant determinations in granting summary judgment for FDIC. First, appellants generated no trialworthy factual claim that appellees (by acquiring title to the real property which the Health Club leased from the ______ 8 At the outset, we note that appellants' claims based on their alleged status as contractual successors to, and third- party beneficiaries of, the Health Club have been waived, as has their NHCPA claim, because of their failure to present any developed argument on these issues in their appellate brief. See ___ Rhode Island Hosp. Trust Nat'l Bank v. Howard Communications ______________________________________ ______________________ Corp., 980 F.2d 823, 828 n. 8 (1st Cir. 1992) (issues raised in _____ appellate brief in a perfunctory manner, without any attempt at developed argumentation, are deemed waived). Moreover, appel- lants concede that these issues were "never raised" in the only two pertinent memoranda submitted to the district court. Brief for Appellants at 12; see Vanhaaren v. State Farm Mut. Auto. Ins. ___ _________ __________________________ Co., 989 F.2d 1, 4-5 (1st Cir. 1993) (issues raised for the first ___ time on appeal are deemed waived for failure to preserve). Appellants fare little better on their only remaining claim; viz., their alleged "lien" on the Property, roughly ____ analogous to a state-law mechanic's lien, assertedly entitled to priority over the legal title acquired by the Bank through ____________________ Developer) became contractual successors of the Health Club, or ever acquired the Health Club's assets or assumed its liabili- ties. Second, appellants, as alleged third-party beneficiaries, could not enforce the Health Club membership contracts against appellees, since third-party beneficiaries may sue, but may not be sued, for contract damages. Third, appellants cited no legal __ ____ authority or supporting facts for their novel state-law theory that their charter membership contracts were akin to mechanic's liens; that is, property interests "running" with the land. Specifically, plaintiffs failed to show that they supplied the Developer with labor or materials, or perfected their alleged "lien" as required under New Hampshire law. Finally, because appellees were not contractually bound to the terms of the Health Club contracts, appellees could not have violated the NHCPA. 9 foreclosure. Although appellants continued to press this highly dubious claim even at oral argument, as though it were founded on some straightforward extrapolation from New Hampshire law, neither at argument nor in their appellate brief have appellants articulated any rationale for their claim, or cited to any New ___ ___ Hampshire state court decision offering the remotest support.6 If a claimant cannot, or will not, attempt a succinct and cogent articulation of its claim in its appellate brief, it may not __ ___ _________ _____ expect the court to supply it.7 Even assuming their chameleonic liability theories were preserved below, and raised on appeal, summary judgment was warranted. Appellants premised their "mechanic's lien" theory on a basic maxim of New Hampshire law: "It is well settled that if a party [viz., the Bank] is present and sees another [viz., the ___ ___ ____________________ 6Instead, their appellate brief refers to a nine-page memor- andum of law in opposition to the Bank's motion to dismiss which ______ __ _______ appellants submitted to the New Hampshire Superior Court almost three years ago, before FDIC ever removed the case. But see Fed. ______ ___ ___ R. App. P. 28(a)(5) (appellate brief "shall contain the conten- tions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities . . . relied on"); cf. Katz v. King, 627 F.2d 568, 575 (1st Cir. 1980) ___ ____ ____ ("[T]he argument must appear within the four corners of the brief ____ _______ filed in this court. Attorneys cannot circumvent FRAP 28(g) by incorporating by reference another brief filed in another fo- rum.") (emphasis added). Furthermore, procedural lapses aside, nowhere in their three-year-old state court memorandum does the key phrase in their "moving target" offensive "mechanic's lien" ever appear. 7Appellants further argue that the superior court's denial of appellees' motion to dismiss Count 1 was somehow dispositive on the question whether their "mechanic's lien" analogy is viable under New Hampshire law. We disagree. The state court premised its ruling on the ground that Count 1 stated a valid claim for contractual successor liability only, not an equitable estoppel ___________ _________ _________ or mechanic's lien claim. 10 Developer or Health Club] sell and convey property [viz., member- ________ ___ ship contracts] to which he may assert title, without disclosing his title, or objecting to the conveyance, and the sale is made with full knowledge on his part, he will be estopped by his silence from setting up his title thereafter." Corbett v. _____ _______ Norcross, 35 N.H. 99, 115 (1857) (emphasis added). ________ In their state court memorandum, see supra note 6, ___ _____ appellants cite a string of New Hampshire cases containing general discussions of the equitable estoppel and good faith purchaser doctrines. Appellants attempt to predicate the appli- cability of those broad doctrines in the present case on four core allegations: (1) the Bank knew before the Developer execut- ______ ed its mortgage that the Developer intended to sell charter memberships to finance its repayment of the construction loan; (2) the construction loan agreement contained a provision wherein the Bank "agreed" to accept club membership fee proceeds in repayment of the loan; (3) after June 1988, the Bank learned (or should have learned) that the Developer had promised appellants it would establish a segregated trust fund to hold all membership fees, and that the Developer willfully failed to abide by this promise; and (4) the Bank knowingly received $200,000 in member- ship fee proceeds in repayment of its loan.8 ____________________ 8Appellants now concede that their charter memberships cannot meet the literal requirements of a mechanic's lien under _______ New Hampshire law, since appellants neither supplied labor or materials, nor perfected their alleged "liens." See supra note ___ _____ 5. Appellants present no argumentation or authority which would indicate that perfection is a dispensable requisite to mechanic's lien priority over a duly recorded mortgage lien. See N.H. Rev. ___ 11 The fundamental problem for appellants is their failure to produce competent evidence supporting these crucial factual allegations. See Town of Nottingham v. Lee Homes, Inc., 118 N.H. ___ __________________ _______________ 438, 442 (1978) ("the party asserting [equitable] estoppel bears the burden of proving it"); see also Celotex Corp. v. Catrett, ___ ____ ______________ _______ 477 U.S. 317, 322 (1986) (where nonmovant under Rule 56 would bear the burden of proof at trial, its failure to produce suffi- cient evidence to generate a trialworthy issue warrants summary judgment). Most conspicuously, appellants have yet to proffer the alleged charter membership contracts, presumably accessible to them without resort to discovery.9 Nor have they presented _______ ______ __ _________ ____________________ Stat. Ann. 447:10 (1993). Thus, appellants' Bateman exception _______ claim, see supra at p. 6, fails as a matter of law. ___ _____ 9Even if they had presented competent Rule 56 evidence on these factual matters, appellants would still face three considerable hurdles on the merits. See also note 10 infra. ___ ____ _____ First, unlike all of the aggrieved parties in the cited New Hampshire cases, appellants have not made the threshold showing that the law of any state recognizes health club memberships as "property" interests. The only case appellants cite is wholly unsupportive. See Silver Hills Country Club v. Sobieski, 361 ___ ___________________________ ________ P.2d 906, 907 (Cal. 1961) (considering analytically distinct question whether the sales of club memberships were "securities" subject to regulation California's Corporate Securities Act). Second, the New Hampshire cases appellants cite involve a narrow and distinctive species of fraud; namely, omissions and other misleading conduct (e.g., silence, execution of releases, ____ sharing in sale proceeds) by a defendant which lead the party acquiring the property to believe that the defendant neither has nor will assert any claim, superseding title, or competing interest in the property conveyed. See, e.g., New Hampshire Sav. ___ ____ __________________ Bank v. National Rockland Bank, 93 N.H. 326, 329 (1945) (estop- ____ _______________________ ping executor of decedent owner of passbook savings account, where decedent had made inter vivos transfer of passbook to _____ _____ daughter-in-law, along with a withdrawal form endorsed in blank, and daughter-in-law pledged passbook as collateral for personal loan). Appellants' promised evidence would not show that the Bank concealed its interest in the Property, nor can appellants _________ ________ plausibly dispute that they were at all times on constructive 12 any other evidence to rebut appellees' proof, in the form of a sworn affidavit by the Bank's former vice-president, that the Developer did not directly contract with appellants, but leased _________ ______ the health club facilities to a distinct corporate entity (i.e., ____ the Health Club) which in turn entered into club membership __ ____ contracts with the appellants. Further, appellants' sole evi- ____ dence of the alleged agreements and communications between the Bank and the Developer is an affidavit by appellants' attorney, ________ generally relating evidence appellants would present at trial. __ _____ But see, e.g., Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st ___ ___ ____ _______ ________________ Cir. 1990) ("[A] mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax."). The affidavit is unaccompanied by documentary support. See Fed. R. ___ Civ. P. 56(e); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure 2722, at 56-58 (2d ed. _______________________________ 1983) (averments made in Rule 56 affidavit to unattached con- tracts and documents may be sufficient to establish a triable issue as to their existence, but not as to their terms). Nor _____ does the affidavit present any other basis for evaluating the affiant-attorney's personal knowledge of contractual transactions ____________________ notice of the Bank's recorded mortgage. Finally, even if the Bank might be estopped from asserting ___ ____ its mortgage and power of sale, appellants offer no explanation as to how such an estoppel would insulate them from the defenses of the Bank's successors particularly the FDIC with its __________ D'Oench Duhme defense absent evidence that these grantees knew _____________ ____ of the facts giving rise to a bar to the Bank's claim. See, _____ ___ e.g., International Chimney Corp. v. 26 West Spring St. Assocs., ____ ___________________________ ___________________________ 561 N.Y.S.2d 933, 934 (App. Div. 1990) ("[E]quitable estoppel should be applied with . . . even greater caution when sought to _______ _______ be invoked against a subsequent owner.") (emphasis added). __________ _____ 13 between the Bank and the Developer, the Developer and the Health Club, or the Health Club and appellants. Cf. Postscript Enters. ___ __________________ v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990) ("'Attor- _________________ neys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e).'") (citing Kamen v. American Tel. _____ _____________ & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).10 __________ The district court judgment must be affirmed. Affirmed. Affirmed. ________ ____________________ 10Nor does the record indicate that appellants ever request- ed "a continuance to permit affidavits to be obtained or deposi- tions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). See, e.g., De la Torre v. Continental Ins. Co., 15 F.3d ___ ____ ___________ _____________________ 12, ___ (1st Cir. 1993) [1994 U.S. App. LEXIS 1502, at p*9 (1st Cir. Jan. 31, 1993)]. 14